## Richmond

### NORTH AMERICAN LIFE & CASUALTY COMPANY

### V.

### KETTI M. TYREE

October 5, 1979.[1]

Record No. 771567.

Present: All the Justices.

---

[1] This opinion will be substituted for a prior unreported opinion filed in this case on August 30, 1979 and the earlier opinion will be withdrawn.

E. *Brodnax Haskins* (*John J. Wicker, Jr.; Floyd C. Bagley; Wicker, Haskins & Hutchens,* on brief), for appellant.

*Daniel H. Borinsky* (*Robert J. Zelnick; Nageotte, Borinsky & Zelnick,* on brief), for appellee.

PER CURIAM.

George D. Tyree, Jr., was a member of the law firm of Nageotte, Tyree and Borinsky, which, on February 12, 1975, made application to the North American Life & Casualty Company for participation in the company's group insurance plan. The company issued to the firm its group master policy on March 1, 1975, with certificate of participation to each of the firm's employees, including Tyree. On April 3, 1975, Tyree applied to the company for a $10,000 policy of individual life insurance in accordance with the conversion provision of the group policy. The conversion policy was issued to him on April 21, 1975.

On May 29, 1975, Tyree died and thereafter Tyree's widow, Ketti M. Tyree, who was named as his beneficiary in both the group policy and the conversion policy, filed her motion for judgment against the company and recovered. This appeal by North American questions the sufficiency of the evidence and the action of the court in granting and refusing certain instructions.

The eligibility requirement for participation in the group plan by full-time employees of the law firm is stated in the policy as follows:

The following persons will be eligible to be insured under this Policy:

(a) All full-time employees to age 65 in ACTIVE SERVICE at their customary place of employment who work a minimum of 30 hours per week for employer members.

The definition of active service is given in the policy as follows:

An *Insured Person* will be considered in *Active Service* on a day which is a scheduled work day if he is performing in the customary

manner all of the regular duties of his employment on a full-time basis either at his customary place of employment or at some location to which that employment requires him to travel. . . .

The group policy included the group insurance provisions required by Code §38.1-428.1, which provides for the subsequent issue, without medical examination, of an individual life insurance policy upon termination application of any employee who had been included in the group policy.[2] In Tyree's application for conversion to an individual policy, "in accordance with the provisions" of the group policy and his certificate, he stated that his employment with his law firm had terminated on March 31, 1975.

On September 11, 1974, Tyree was operated on for carcinoma of the colon, and thereafter required weekly paracentesis, a procedure whereby fluid is drawn from the abdomen. He was seen by his physicians for medical treatment at least 40 times between the date of the surgery and the time of his death. The doctors and Tyree made a certification that he was continuously and totally disabled and unable to work after the operation was performed. This certification was made to the Mutual of Omaha Insurance Company, with whom Tyree had a disability policy. Mutual of Omaha made payments for continued total disability from September 11, 1974, until Tyree's death on May 29, 1975, except for 16 days during December 1974, and January and February 1975, when Tyree was considered partially disabled.

Robert Sheaff, Jr., a district claims representative for Mutual of Omaha, testified that he interviewed Tyree on March 18, 1975, in connection with his claim for total disability, and the decedent confirmed that he had worked only 16 days during December of 1974 and the first part of 1975.

Dr. L. F. Smith, Jr., one of Tyree's attending physicians, acknowledged a statement he gave on April 29, 1975, saying that Tyree was "continually, totally disabled (unable to work)" and that this condition had existed from September 11, 1974, and would continue for an "indefinite" time.

---

[2] Section 31 of the Group Policy reads:
If the insurance of an Insured *Person* terminates due to termination of *Active Service* (for any reason other than death) or termination of *Active Service* in a class eligible for such insurance, such *Insured Person* will be entitled to have issued to him by the Company without evidence of insurability, upon application made to the Company within thirty-one days after such termination of insurance and upon payment of the required premium, an Individual policy, or policies, of life insurance . . . .

Mrs. Tyree testified that the Tyrees' home was located about five or ten minutes from Mr. Tyree's law office, and that Mr. Tyree also had an office at home which contained a filing cabinet, a desk, a telephone, a dictaphone, an adding machine, a calculator and some law books. Mrs. Tyree stated that her husband would work there after dinner and on weekends. She said that after his sickness he continued to work at home and would bring files from the office. Her testimony was "he would work on the files, you know, as often as he felt like it which was about thirty hours a week". When asked if he worked in his office after his cancer was diagnosed, she said that he had good days and bad days and would go in three or four times a week when he felt it necessary; that usually people in the office would come to him, bringing the "folders" out so that he could work on them at home; that by February 1975, she thought her husband was going to his law office two times a week, but only to get more work to take home; and that she did not remember whether he was home the entire month of March. Finally Mrs. Tyree said that at the end of March, or the beginning of April, her husband decided to stop work entirely and spend his time with his family.

By her testimony, plaintiff attempted to establish that Mr. Tyree was eligible for coverage under the predecessor group policy, and, as an insured, was entitled to have this policy converted into an individual policy. In her brief she contends that the only issue before the jury was whether the decedent was working in accordance with the provisions of the group insurance policy, admitting there was conflicting evidence as to the crucial fact of Mr. Tyree's employment status during the relevant period.

It was conclusively established that Mr. Tyree was suffering from a terminal illness for the last six months of his life, a fact that was known to him, his family, and in all probability his associates. He was constantly receiving medical care, yet his condition continued to deteriorate from the time of his operation in September 1974, until his death. He did some work during this period, both at his law office and at his home. However, he regarded himself, and was regarded by his doctors, as totally disabled. The work he did was such as would normally be done by a critically ill man endeavoring to carry on to some degree, and to adjust his affairs in preparation for the inevitable. The testimony shows that the decedent bore his illness with great fortitude and that he was aided by an attentive and supportive wife.

However, we cannot find any evidence that Mr. Tyree was in the "active service" of his law firm at the time the group policy was issued or at any time thereafter prior to his death. He was a member of a

law firm with offices located in Woodbridge, Virginia. That was his customary place of employment, and that was the place where he was supposed to have worked a minimum of 30 hours a week to be classified as an insured person under the group policy. Additionally, the policy required that an insured person be in active service on *scheduled work days* and perform in the customary manner *all* the regular duties of his employment on a *full-time* basis. These duties had to be performed either at Mr. Tyree's law office in Woodbridge, or had to be performed at some location to which that employment required him to travel. While it is commonly known that lawyers perform work at places other than at their law offices, Tyree, to be eligible under this group policy, had to travel to a location that his employment required him to travel. The work that he did in his home during the last months of his life was not done there because his employment required him to do the work in his home, but because Mr. Tyree was physically unable to work full-time and perform his customary duties in his Woodbridge office.

We find the conclusion inescapable that as of March 1, 1975, the date the group policy was issued, Mr. Tyree did not then or at any other pertinent time meet the eligibility requirements of the group policy, was not an insured thereunder, and was not entitled to exercise the conversion privilege provided insureds therein.

We find no merit in the plaintiff's cross assignments of error which question the action of the court in failing to grant Mrs. Tyree's motions for summary judgment and in admitting evidence of payments for continuous and total disability made to the decedent by Mutual of Omaha.

The verdict of the jury in favor of the plaintiff is set aside; the judgment of the trial court is reversed; and final judgment will be entered here for the defendant.[3]

*Reversed and final judgment.*

---

[3] The dispositive issue in this case is a narrow one. No essential fact was in controversy other than the eligibility of Mr. Tyree to be an insured under his law firm's group policy. Notwithstanding this, an examination of the original court papers reveals a 466 page record, a 335 page transcript, numerous exhibits and other incidental papers. The case consumed two days in its actual trial, and there were preliminary motions. The transcript consists largely of colloquy between counsel and the court and arguments stated and repeated at length. The printed record contains much that is unnecessary and immaterial. Because we find the record was unduly encumbered by both plaintiff and defendant, we will tax the costs equally against them.