LINCOLN NATIONAL LIFE INSURANCE COMPANY

v.

COMMONWEALTH CORRUGATED CONTAINER CORPORATION

Record No. 820117

Decided March 8, 1985, at Richmond

Present: All the Justices

*Dennis O. Laing (A. C. Epps; Christian, Barton, Epps, Brent & Chappell,* on briefs), for appellant.

*Barbara Tessin Derry (John F. Kay, Jr.; Mays, Valentine, Davenport & Moore,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This is the appeal of an insurance case involving a coverage question under a group policy. Specifically, the issue is whether an employee was "actively at work" when the policy became effective to enable him to qualify for life insurance benefits under the contract.

Anthony J. Bagley died on August 8, 1977 at a Richmond hospital where he had been confined for nearly two weeks. At the time of his death, Bagley was 65 years of age and employed as a salesman for appellee Commonwealth Corrugated Container Corporation. Bagley also was Chairman of the corporation's Board of Directors and a stockholder in the company which he and another formed 13 years earlier.

Appellant Lincoln National Life Insurance Company issued a group policy effective August 1, 1977 to Commonwealth, the policyholder. Life insurance benefits in the amount of $15,000, for employees of Bagley's age and job description, were among the coverages provided under the policy. According to the application form: "Each employee must be actively at work when the Insurance provided under the policy becomes effective; otherwise, it will not become effective with respect to him until the next following day on which he is actively at work. . . ."

The insurer denied the claim of Bagley's widow for payment of the death benefit and, in 1979, she assigned her claim under the policy to Commonwealth.

The policyholder then brought this suit against the insurer. Following a bench trial, the court below determined that Bagley was covered under the policy. The insurer appeals from the October 1981 order entering judgment in favor of Commonwealth for $15,000 plus interest from August 8, 1977.

The facts, although mainly undisputed, will be viewed in the light most favorable to the party prevailing below. Commonwealth, a manufacturer of corrugated shipping boxes, was formed in 1964 by Bagley and Maurice F. Dozier, each owning 50 percent of the stock. In 1972, James Boulden acquired a one-third interest, with Bagley and Dozier, in Commonwealth and an interest in Fiber Tube Corporation, an allied company that had been formed in 1969 by Bagley and Dozier. Fiber Tube manufactures spiral tubes and covers. The two corporations operate from the same office and employ approximately 22 persons.

Dozier, president of both corporations, testified that Bagley's duties as Board Chairman included making reports to stockholders, acting in a sales capacity, and assisting Dozier in administration daily. According to Dozier, he did not, as president, make any policy or administrative business decisions "without full conversation" with Bagley and Boulden. The trio usually met in the late afternoon to discuss "problems that had developed" and other business matters, for example, whether "any machinery or equipment . . . needed repair or replacement."

Bagley's compensation included a "straight" salary, plus sales commissions, with the salary apparently being the larger component. Bagley was "the senior salesman" for the corporation, spending 30-35 hours per week out of the office in sales and the balance of his time on "ownership" duties in the office.

In July of 1977, Dozier learned from Melvin R. Mercer, a local insurance agent who had been "taking care" of Commonwealth's life insurance needs for several years, that the insurer providing Commonwealth's group coverage was on the verge of insolvency. Commonwealth sought to obtain similar coverage from another insurer. Bagley, Dozier, and Boulden decided, after considering several proposals, to select Lincoln National, Mercer's "principal company." The necessary Lincoln National forms were executed under the agent's supervision on Friday, July 22, in Common-

wealth's office. Dozier signed the application for insurance as company president. Bagley executed a "Group Insurance Enrollment Card."

Bagley remained at home because of illness on July 25 and 26. Dozier talked to Bagley by telephone both days, discussing "business," Bagley's health, "what came in the morning's mail," "problems," and "what [was] going on in the plant."

Bagley, who had not been sick for at least six months, was hospitalized on Wednesday, July 27, for conditions which proved to be terminal. Dozier visited Bagley that afternoon and each succeeding day until August 5, three days before Bagley's death and the day Dozier and Boulden learned the terminal nature of Bagley's condition. During each visit, lasting 10 to 15 minutes each, Bagley was alert and the two discussed "business," "what money came in the morning's mail, what bills we have to pay," "who gets paid based upon income," and similar "judgments." Dozier testified that during the period he "did get the benefit of [Bagley's] advice" and that he "[d]efinitely" considered Bagley to be in the service of the corporation.

Robert J. Boulden, Commonwealth's vice president in charge of sales, visited Bagley in the hospital on three occasions, staying about one-half hour each time. They discussed "the condition of his health and business." Bagley was alert, according to Boulden, and on August 3 Bagley walked unassisted to a new hospital room assigned him. Boulden testified that the business matters discussed with Bagley in the hospital were the same types of subjects normally discussed with Bagley at the office.

According to the record, Bagley was compensated during the period July 25 to August 8 pursuant to a "sick leave policy" of the corporation. Under the policy, an ill employee who was an officer or director would be paid full salary for a six-month period.

On appeal, the insurer contends Bagley was not eligible for coverage under the policy because he was not "actively at work" on the effective date of the policy or at any time thereafter. It argues that the trial court's finding of coverage under the policy in question "is totally without any support in the record."

The insurer says that, like most group plans, its policy did not require Commonwealth's employees to submit to a physical examination or even disclose their medical history. Instead, the insurer accepted the risk of all qualified employees in the group with the simple requirement that the employee be "actively at work" on

the effective date of the policy to be eligible for coverage. Even though the employee is not "actively at work" on the effective date of the policy, he is not foreclosed from eligibility, according to the insurer. An employee who was absent from work, either home sick or hospitalized, on the effective date of the policy would become eligible if and when he returns to work.

The insurer argues the "actively at work" requirement "purely and simply means that the employee is carrying out his normal and customary duties." Any other construction of the "unambiguous" term, says the insurer, would be tantamount to rewriting the policy and imposing upon the carrier a risk it did not intend to underwrite.

The insurer emphasizes that others were performing Bagley's sales duties during the period in question, that he was paid full compensation during the period under a sick-leave policy, and that he always was confined at home or in a hospital from July 25 to August 8. It says that "non-specific business discussions at the hospital, even if they did occur, are simply insufficient to constitute activity" rendering Bagley eligible for coverage. We disagree with the insurer's contentions.

Interpretation of the phrase "actively at work" contained in insurance policies, and similar phrases such as "actively employed," "actively engaged," "active work," and "active service," has been the subject of much litigation in other jurisdictions. *See* Annot., 58 A.L.R.3d 993 (1974). This is our first opportunity to construe the phrase in issue. *Cf. North American Life & Casualty Co.* v. *Tyree,* 220 Va. 397, 258 S.E.2d 110 (1979) ("active service" that was to be performed at a specific location with a minimum hourly requirement).

▋ Initially, upon examination of the term "actively at work," we conclude that it is patently ambiguous and uncertain, when viewed in the context of the contract as a whole and in the context of Bagley's employment duties. The policy nowhere defines the term. Application of the term is not limited to work at a specific place or to a minimum number of hours of work daily or weekly. The insurer readily could have narrowed the term's meaning by inserting language that limited the scope of the phrase. It is as logical to conclude under these facts that the phrase has the meaning the policyholder urges as it is to conclude that the term has the meaning the insurer asserts. "An ambiguity exists when language admits of being understood in more than one way or re-

fers to two or more things at the same time." *Renner Plumbing* v. *Renner,* 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983); *Berry* v. *Klinger,* 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983).

Because the policy language is ambiguous, it will be construed strictly against the insurer. And where the policy is susceptible of two constructions, one of which would effect coverage and the other would not, the court will adopt that construction which will afford coverage. *White* v. *Blue Cross,* 215 Va. 601, 602, 212 S.E.2d 64, 65 (1975).

The record amply supports the trial court's finding that Bagley, in fact, was covered. He was not merely a salesman, as the insurer would have us conclude. A founder of the corporation, Bagley functioned as an executive, policymaker, and administrator. One witness referred to Bagley, Dozier, and Boulden as "partners" in the operation of the company. Indeed, Bagley's "ownership" duties included approval of the very contract under consideration here.

Even though the foregoing duties were ordinarily performed at the business office, the record establishes no reason why they could not be performed elsewhere. Policymaking, administrative planning, and other business decisions, under the circumstances of this case, could be accomplished as well away from the business office as at the work place. And the record shows that Bagley participated in such business decisions while at home and in the hospital from July 25 through August 1 (the effective date of the policy) to August 5. During the period, Bagley was alert, lucid, and sufficiently robust to walk unaided to a new hospital room on August 3, even though he was suffering from terminal conditions. Dozier sought, and obtained, Bagley's counsel and advice during the period, testifying that Bagley was "definitely" in the service of the corporation. Thus, at the pertinent time (August 1), Bagley was "actively at work" performing some of his customary and usual business duties, albeit he was ill in the hospital, a situation which does not, in itself, negate coverage.

Finally, we have studied the foreign cases relied upon by the insurer, as well as others favorable to its position discovered through independent research. Likewise, we have reviewed the foreign cases cited by the policyholder, and others disclosed by research. No useful purpose would be served by analyzing and comparing these decisions. They are all factually dissimilar, to varying degrees, from the present case, and were decided, as is this

case, on the policy provisions and facts of the particular controversy.

Accordingly, the judgment of the trial court will be

*Affirmed.*

CARRICO, C.J., dissenting.

I would reverse this judgment. I cannot agree that an employee, albeit an executive type, who is hospitalized with a terminal illness and drawing sick pay, but who discusses business with associates during their visits, is "actively at work" within the meaning of an insurance clause. Even if it is assumed that the language of the clause is ambiguous and that it must be construed strictly against the insurer, there just is not enough elasticity in the language to stretch it to cover the factual situation in this case.