**MINNESOTA LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Jacob P. SCOTT, et. al. Defendants.**

**No. 1:03CV631 (GBL).**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 9, 2004.

Edwin Ford Stephens, Esquire, Christian & Barton, Richmond, VA, for Plaintiff.

Tamara Leigh Tucket, Esquire, LeClair Ryan, Richmond, VA, for Defendant.

## MEMORANDUM ORDER

LEE, District Judge.

THIS MATTER is before the Court on Plaintiff Minnesota Life Insurance Company's and Defendants Jacob P. and Emily J. Scott's Cross–Motions for Summary Judgment. This case involves Defendants' insurance claim against Plaintiff insurance company. Defendants are the beneficiaries of the Decedent insured father, who died in a single car accident while driving under the influence of alcohol. Upon Decedent's death, Plaintiff paid the Defendants for basic life insurance coverage; however, Plaintiff refused to pay Decedent's double indemnity accidental death

benefits because Plaintiff argued that Decedent's death was a foreseeable consequence of his driving under the influence of alcohol. The issue before the Court is whether the Plaintiff must pay Decedent's beneficiaries for accidental death coverage when the Decedent was driving while intoxicated, knew the consequences of doing so, and the accidental death riders contained an exclusion denying coverage if death was caused by the insured's participation in or attempt to commit a crime. The Court finds that the Plaintiff is not required to pay the proceeds of the additional accidental death coverage because Decedent's death was not an accident within the meaning of the insurance policy. Also, the Court finds that Plaintiff's contractual exclusion denying accidental coverage applies because Decedent's death was a direct result of Decedent's participation in the crime of driving under the influence of alcohol ("DUI").

### BACKGROUND

On September 21, 2002, Michael Scott ("Scott" or "Decedent") died as a result of a single car accident in Westmoreland County, Virginia. Road and weather conditions were safe that day. However, evidence suggests that he was speeding at the time of the accident. Additionally, the autopsy shows that Decedent's blood alcohol concentration, at the time of the accident, was between 0.16 and 0.19 percent by weight by volume, over twice the legal limit.[1] This was sufficient to raise a presumption of intoxication under Virginia law. Decedent had a prior record of driving intoxicated. Several years prior to the

fatal accident, Scott pleaded guilty to DUI and was required to attend an alcohol safety course.

At the time of his death, Michael Scott was insured under two group term life insurance policies. Plaintiff Minnesota Life Insurance Company ("Minnesota Life") issued these policies to the Board of Trustees of the Virginia Retirement System.[2] Minnesota Life paid Defendants $276,000 in basic and optional life insurance benefits. However, Plaintiff refused to pay Defendants an additional $276,000 in proceeds that would have been due under the Decedent's Accidental Death and Dismemberment Policy Riders ("AD & D Riders"). The purpose of the AD & D Riders was to provide additional coverage to Defendants upon due proof that Decedent died or suffered dismemberment as a result of an accidental injury.

The AD & D Riders define accidental death as meaning "that the insured's death results, directly and independently of all other causes, from an accidental injury which is unintended, unexpected, and unforeseen." Pl.'s Br. Supp. Mot. Summ. J. at 2. Additionally, the AD & D Riders have an exclusion (the "crime exclusion"), which denies payment of the benefit where the insured's death results from or is caused directly or indirectly by "the insured's participation in or attempt to commit a crime or a felony." Id.

Plaintiff filed a declaratory judgment action, requesting that this Court uphold Plaintiff's decision to deny payment of the additional AD & D coverage.[3] In addition, the Plaintiff and the Defendants filed

---

1. The legal blood alcohol concentration limit in the Commonwealth of Virginia is .08%. Va.Code Ann. § 18.2–266 (Michie 2004).

2. Michael Scott was the Director of Parks and Recreation for Stafford County, Virginia and was insured through the Virginia Retirement System.

3. This Court certified, to the Supreme Court of Virginia on January 20, 2004, the question of whether Minnesota Life's AD & D Riders preclude awarding accidental death benefits under Scott's life insurance policy for his death, when Scott was the intoxicated driver killed in a single vehicle automobile accident. The Supreme Court of Virginia declined to

cross-motions for summary judgment. In the parties' cross-motions for summary judgment, Plaintiff argues that proceeds are not due to the Defendants under the AD & D Riders because the insured's death was a foreseeable consequence of the insured's actions and as such was not an accident within the insurance policy's meaning. In the alternative, Plaintiff argues that the crime exclusion should apply against Decedent because he was participating in a crime, specifically DUI, which resulted in his death. Defendants argue Plaintiff must pay the proceeds under the AD & D Riders for two reasons. First, Decedent's death was unexpected, unintended, and unforeseen and as such was an accident within the meaning of the policy. Second, the crime exclusion in the AD & D Riders is ambiguous, is contrary to a reasonable insured's expectations, and should not be applied to DUI.

### DISCUSSION

#### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). This standard of review sets forth the procedural framework for the Court's analysis; each subsection contains the rule of law that applies to each individual claim.

#### B. Analysis

The Court holds that the Plaintiff is not liable to the Defendants for the accidental death benefits provided for in the AD & D Riders for two reasons. First, the Decedent's death was not an accident within the meaning of the insurance policy. Second, Decedent's participation in a crime, DUI, which was the cause of death, triggers the AD & D exclusion.

■ In construing insurance policy language, the Court must examine the policy as it would any other contract. "An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction."[4] Hill v. State Farm Mutual Auto. Ins., 237 Va. 148, 152, 375 S.E.2d 727 (1989). Therefore, the Court must

---

accept the certified question of law because it held that the question presented issues of contract interpretation and proof of causation.

4. Because the insurance policies were issued to the Virginia Retirement System and the accident occurred in Virginia, Virginia law governs them. See Dodson v. Aetna Casualty & Surety Co., 649 F.Supp. 1455, 1456 (E.D.Va.1986) ("The policy was issued in Virginia and the accidents occurred in Virginia. Hence, for this reason, Virginia law governs.").

construe the terms of Decedent's life insurance policy, including the AD & D Riders and exclusion at issue, as to their ordinary and customary meaning. Applying this standard here, the Court finds that Decedent's death is not covered under the AD & D Riders.

### I. Scott's Death was not an Accident

■ The Court holds that Michael Scott's death was not accidental within the meaning of the AD & D Riders because Decedent's death was a reasonably foreseeable consequence of his driving while intoxicated. Virginia courts have held that certain deaths are expected and foreseeable because they are the natural and probable result of an insured's voluntary act. "The generally accepted rule is that death or injury does not result from accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury." *Smith v. Combined Ins. Co.*, 202 Va. 758, 761, 120 S.E.2d 267 (1961). The distinction between accidental death and non-accidental death under Virginia law was refined by the United States Court of Appeals for the Fourth Circuit.

The Fourth Circuit noted that "death will be found non-accidental where an insured has deliberately exposed himself to a substantial and foreseeable risk of serious injury or death, even if death is neither intended nor certain to result." *Patch v. Metropolitan Life Ins. Co.*, 733 F.2d 302, 303 (4th Cir.1984). Applying this rationale to driving while intoxicated, the Seventh Circuit held that "a death that occurs as a result of driving while intoxicated, although perhaps unintentional, is not an 'accident' because that result is reasonably foreseeable." *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1110 (7th Cir. 1998).

■ Decedent's AD & D Riders state that Plaintiff will award the accidental death benefit only upon proof that the insured died as a result of an accidental injury. The AD & D Riders contract defines an accidental death as a death resulting from an accidental injury that is "unintended, unexpected, and unforeseen." Pl.'s Br. Supp. Mot. Summ. J. at 2. The issue, then, is whether Decedent's death, which resulted from his driving while intoxicated, was intentional, expected, or foreseeable.[5] While neither party argues

---

5. The Defendants argue that a foreseeability test should not be used in determining when, under Decedent's life insurance policy, a death is considered accidental because of a potential "slippery slope" effect. *See* Defs.' Br. Supp. Mot. Summ. J. at 8–9. The Defendants contend that if death that results from driving while intoxicated is not accidental under a foreseeability test, then neither can deaths that result from reckless driving, failure to yield to the right of way, or improper lane changes, etc. *Id.* This argument is flawed for several reasons. First, the Court stresses that the holding in this case is very narrow. The holding is based upon the *specific* language of the insurance policy (defining an accidental death as "unintended, unexpected, *unforeseen*") and the *specific* facts of the case (the substantial risk of death or serious injury of driving while intoxicated, Dece-

dent's knowledge of these risks, Decedent's high level of intoxication at the time of death, and the determination that the cause of death was driving while intoxicated). The holding here does not speak to the outcome of the Defendants' hypothetical "slippery slope" examples. Second, the Defendants ignore the fact that the Court must construe the contract before it, giving the language of the insurance policy its "ordinary and customary meaning." *Hill*, 237 Va. at 152, 375 S.E.2d 727. The AD & D Riders define accidental death as death resulting "from an accidental injury which is unintended, unexpected, and *unforeseen*." *See* Pl.' Br. Supp. Mot. Summ. J. at 2 (emphasis provided). This Court has an obligation to interpret the language given within the four corners of the contract under Virginia law. Virginia law provides that "death will be found non-accidental where an insured has

that Scott intended to bring about his own death by drinking and driving, the plain reading of the AD & D Riders requires that, in order for a death to be accidental, it must be unintentional, unexpected, *and* unforeseen. Therefore, if Decedent's death was either expected or foreseeable, it was not an accident within the plain reading of the AD & D Riders.

By driving under the influence of alcohol, Decedent exposed himself to a substantial and foreseeable risk of death. The extreme dangers and substantial risk of injury to others and oneself from driving while intoxicated are widely known. Moreover, Decedent fully understood the dangers of drinking and driving.[6] By voluntarily becoming intoxicated and driving his vehicle under the influence of alcohol (fully aware of the dangers of doing so), Decedent exposed himself to a substantial and foreseeable risk of death, which, by definition, cannot be accidental in nature. Given these circumstances, the Court holds, as a matter of law, that Decedent's death was a natural and probable consequence of his knowing actions of driving while intoxicated and therefore did not occur by accidental means.

### ii. Decedent's Death Resulted from his Participation in a Crime

■ Even assuming, arguendo, that Decedent's death was "accidental" within the meaning of the AD & D Riders, the Court still concludes that Defendants are not entitled to the AD & D benefits because Scott's death resulted from his participation in the crime of DUI. Decedent's

driving while intoxicated is in clear violation of the crime exclusion within the AD & D insurance policy contract. In determining the applicability of exclusions, "[r]easonable policy exclusions not in conflict with statutes will be enforced; to be effective, the exclusionary language must clearly and unambiguously bring the particular act or omission within its scope." *Floyd v. Northern Neck Insurance Co.*, 245 Va. 153, 158, 427 S.E.2d 193, (1993). "[A]n ambiguity, if one exists, must be found on the face of the policy." *Nationwide Mutual Ins. v. Wenger*, 222 Va. 263, 268, 278 S.E.2d 874 (1981). "Language is ambiguous when it may be understood in more than one way or when such language refers to two or more things at the same time." *Salzi v. Va. Farm Bureau Mut. Ins. Co.*, 263 Va. 52, 55–56, 556 S.E.2d 758 (2002) (citing *Lincoln National Life Ins. Co. v. Commonwealth Corrugated Container Corp.*, 229 Va. 132, 136–37, 327 S.E.2d 98 (1985)).

■ There is no ambiguity in the exclusion at hand. The AD & D Riders have a clear and unambiguous exclusion for death that "results from or is caused directly or indirectly by . . . the insured's participation in or attempt to commit a crime or a felony." Pl.'s Br. Supp. Mot. Summ. J. at 18. When Decedent voluntarily drove under the influence of alcohol, he participated in a crime. Under Virginia law, driving under the influence of alcohol is a crime, specifically it is a Class 1 misdemeanor. Virginia Code § 18.2–266 states that it is "unlawful for any person to drive

---

deliberately exposed himself to a substantial and foreseeable risk of serious injury or death, even if death is neither intended nor certain to result." *Patch*, 733 F.2d at 303. This interpretation is consistent with the language of Decedent's life insurance policy and with Virginia law.

6. Several years before the incident, the Stafford General District Court ordered Scott to

attend an alcohol safety course for drinking and driving, subsequent to his plea of guilty for DUI. *See* Pl.'s Br. Supp. Mot. Summ. J. at 3–4; Defs.' Br. Supp. Mot. Summ. J. at 3. Additionally, Decedent understood and explained the dangers of drinking and driving to Defendants when they were children. *See* Pl.'s Br. Supp. Mot. Summ. J. at 3.

or operate any motor vehicle ... while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume ... [or] while such person is under the influence of alcohol." Scott's blood alcohol concentration was between 0.16 percent and 0.19 percent, well above the legal limit when he was killed in a single car accident. *See* Pl.'s Br. Supp. Mot. Summ. J. at 9; Defs.' Br. Supp. Mot. Summ. J. at 3.

█ It is important to note, however, that it is not enough that the commission of the crime and death occur concurrently; instead, given a plain reading of the crime exclusion, death must *result* from the participation in or attempt of a crime or felony. In other words, there must be a causal link between the participation in a crime and the death of the insured. The Court finds that Decedent's participation in the crime of DUI was the cause of his fatal car accident. The evidence shows that Decedent, acting under the influence of alcohol, was not obeying general traffic laws and was speeding. *See* Pl.'s Br. Supp. Mot. Summ. J. at 18. Moreover, there was no evidence of other elements that could have caused the accident—the weather was clear, the road was straight and dry, there was little traffic, and there was no evidence of mechanical failure. *Id.* at 19, 327 S.E.2d 98. The Court thus finds that Scott was participating in the crime of DUI and that such participation in this crime directly or indirectly caused his death.

Plaintiff has established that, as a matter of law, Defendants are not entitled to accidental death benefits under Decedent's life insurance policy because his death was not an accident within the insurance policy's meaning. In addition, Decedent's participation in the crime of DUI was the cause of death. Defendants have not shown that a genuine issue of material fact exists for trial; therefore, Defendants are not entitled under the four corners of the insurance policy contract to any AD & D benefits. Accordingly, Plaintiff is entitled to summary judgment.

## CONCLUSION

In conclusion, Plaintiff's Motion for Summary Judgment is granted because Decedent's death was not an accident within the meaning of the AD & D. In addition, the crime exclusion applies because Decedent's participation in the crime of DUI resulted—either directly or indirectly—in Decedent's death. Therefore, Defendants are not entitled to any AD & D benefits under the insurance policy contract.

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion for Summary Judgment is DENIED. It is further

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED. This case is hereby dismissed.

The Clerk is directed to enter judgment in favor of Defendant pursuant to Rule 58 of the Federal Rules of Civil Procedure.

The Clerk is directed to forward a copy of this Order to counsel.