### Richmond

## St. Paul Fire & Marine Insurance Company

## v.

## S. L. Nusbaum & Company, Inc.

Record No. 811391.

June 15, 1984.

Present: All the Justices.

*James C. Howell (Willcox, Savage, Dickson, Hollis & Eley, P.C.,* on briefs), for appellant.

*Robert C. Nusbaum (Linda S. Laibstain; Hofheimer, Nusbaum, McPhaul & Brenner,* on brief), for appellee.

PER CURIAM.

This appeal requires us to examine, in the context of an "errors and omissions" policy insuring a real estate firm, the applicability of an exclusion of claims arising out of property management from coverage under the policy.

S. L. Nusbaum & Company, Inc., filed a motion for declaratory judgment, alleging that it was covered by a "professional liability" policy of insurance issued by St. Paul Fire & Marine Insurance Company, that Nusbaum was being sued by a party asserting a claim covered by the policy, but that St. Paul had refused to defend the claim. St. Paul's answer raised several affirmative defenses, including the existence of a clause in the policy which excludes coverage for any claims which "arise out of or in connection with the management or sale of property developed, constructed or owned by the Insured, or any firm or corporation in which the Insured has a financial interest, or by any firm coming under the same financial control as the Named Insured." St. Paul contended that the claim against Nusbaum fell within the exclusion.

In a jury trial, after Nusbaum had rested, St. Paul moved to strike Nusbaum's evidence. The motion was denied, renewed at the end of the evidence, and again denied. Thereupon, Nusbaum moved the court to strike St. Paul's evidence and enter summary judgment. The parties agreed that no material facts were genuinely in dispute requiring resolution by the jury and submitted the case to the court as a question of law. The court granted Nusbaum's motion, discharged the jury, and entered summary judgment for Nusbaum in the amount of $45,268.28. We granted St. Paul an appeal, limited to the question whether the event giving rise to the claim occurred in the context of property management, and was thus excluded from coverage under the policy.

Nusbaum is a real estate brokerage firm in the Tidewater area which engages in commercial leasing, commercial and apartment property management, sales, and development. In 1977, Nusbaum applied to St. Paul for "real estate agents errors and omissions coverage." Such a policy covers the insured against claims arising out of negligent errors or omissions occurring in the conduct of the insured's business as a real estate agent, subject to certain specified exclusions. St. Paul required a written application from Nusbaum, in which a breakdown of the firm's gross income for the preceding year (1976) was set forth. Nusbaum stated that it had engaged in real estate sales, which had produced $95,757,

property management, which had produced $884,040, and development, which had produced no income in 1976. Nusbaum specifically agreed, in the application, that property management would be excluded from coverage. St. Paul was concerned that the proposed policy would exclude nearly 90% of Nusbaum's business, and accordingly requested and obtained a letter from Nusbaum stating, "we accept the policy with the understanding that property management is excluded . . . ." St. Paul then issued the policy, effective July 30, 1977, containing the property-management exclusion quoted above. The policy was successively renewed through 1979.

In 1979, Nusbaum was engaged in commercial leasing and property management at the Hilltop North Shopping Center in Virginia Beach. The stockholders, officers, and directors of Nusbaum owned a majority interest in the firm which was developing the shopping center.

In early 1979, while negotiating a lease with Charles J. Brady, a prospective tenant in the center, Edward Goldmeier, a Nusbaum employee, inadvertently misstated to Brady that the previous tenant had grossed approximately $36,000 per month. In fact, the previous tenant of the space in which Brady was interested had grossed approximately $3,600 per month. Brady leased the space and opened a sandwich shop in March 1979. It failed several months later.

In the summer of 1979, Brady filed suit in the Circuit Court of the City of Virginia Beach against Nusbaum, based upon Goldmeier's misrepresentation. Nusbaum referred the claim to St. Paul, which engaged Robert G. Doumar, a Norfolk attorney, to defend Nusbaum. On August 23, 1979, St. Paul, having decided that the property-management exclusion might apply, wrote Nusbaum that it would proceed with the defense of Brady's suit under a reservation of rights. St. Paul requested further information as to the terms of Nusbaum's property management agreement at the shopping center and the interests of Nusbaum's principals in the firm which was developing the center.

After Nusbaum had supplied this information, and some eight weeks after Mr. Doumar had entered his appearance in the Brady suit, St. Paul notified Nusbaum, on October 1, 1979, that it had decided that coverage was excluded under the policy, that it was withdrawing from the defense of Brady's suit, and that it was notifying Mr. Doumar that "he may withdraw from the handling of

this suit in our behalf." Mr. Doumar had secured a dismissal of the Brady suit, without prejudice, on procedural grounds. Brady amended his pleadings and reinstated his suit, whereupon Nusbaum employed its own counsel and defended. Brady prevailed and recovered a $35,000 judgment against Nusbaum. We denied an appeal in Brady's case, and Nusbaum paid the judgment in full, with interest and costs.

In rendering summary judgment against St. Paul, the trial court adopted the view that language in an insurance policy excluding coverage must be strictly construed against the insurance company, and that an exclusion must clearly and specifically describe the act or omission which is the basis of the claim in order to exclude it. The court decided that the property-management exclusion failed to apply, to that degree of certainty, to Goldmeier's conduct in negotiating a lease with Brady, and that St. Paul's policy therefore covered Goldmeier's error.

The opinions of expert witnesses conflicted as to whether leasing is customarily treated as a subdivision of property management in the real estate industry. Nusbaum had an internal division between the leasing and property management departments, and different personnel were assigned to the two functions. Goldmeier was employed solely as a leasing agent and did no work for the property management department. The income generated by the leasing department, however, was a relatively small part of the whole, and was combined with property management income for internal bookkeeping purposes.

Notwithstanding the equivocal nature of the evidence, the parties stipulated that there were no issues of fact for determination by the jury, and we must accept the case as it comes to us on appeal, presenting a pure question of law. Viewed in this light, the result is dictated by well-settled principles. Insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders. The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer. *Ayres* v. *Harleysville Mut. Cas. Co.*, 172 Va. 383, 2 S.E.2d 303 (1939); *Fidelity &c. Co.* v. *Chambers*, 93 Va.

138, 24 S.E. 896 (1896); *U.S. Mutual Accident Association* v. *Newman*, 84 Va. 52, 3 S.E. 805 (1887).

■ Thus, the question in this case is resolved by the mere fact that reasonable men, including experts on the subject of the real estate industry, may reach reasonable, but opposite, conclusions as to whether leasing is a part of property management. It was incumbent upon the insurer to employ exclusionary language clear enough to avoid any such ambiguity, if it wished to exclude coverage for errors committed in the course of leasing. Because St. Paul failed to do so here, we will adopt that construction of the policy most favorable to the insured and affirm the summary judgment entered below.

*Affirmed.*