# Granite State Insurance Company, et al.

## v.

# Nathan Bottoms, et al.

Record No. 910962

February 28, 1992

Present: All the Justices

*George J. Dancigers (Michelle ReDavid Rack; Heilig, McKenry, Fraim and Lollar,* on briefs), for appellants.

*Kenneth R. Yoffy (LeeAnn N. Barnes; Weaver & Yoffy,* on brief), for appellees Lillian R. Bellamy and Elizabeth P. Sanderlin.

Johnny C. Cope for appellees Nathan Bottoms, Colon Brinkley, et al., Trustees of Zion Baptist Church, Zion Baptist Church and Baptist Progress Union, Inc., t/a Zion Baptist Home for the Elderly.

JUSTICE COMPTON delivered the opinion of the Court.

In this insurance case, the dispositive issue is whether the trial court correctly ruled that an exclusion in a policy issued to the

owner of business property did not bar coverage for a claimant's injuries.

In February 1986, appellant Granite State Insurance Company, a member of appellant New Hampshire Insurance Group (collectively, the insurer), issued a "Property Owners Policy" to the Trustees of Zion Baptist Church. The church and Baptist Progress Union, Inc. (collectively, the insured), operate Zion Baptist Home for the Elderly, a Newport News home for adults licensed by the Commonwealth's Department of Social Services.

In December 1986, while the policy was in effect, Olive C. Peters, age 89, a resident of the Home and an incompetent person, was injured there. Subsequently, Lillian R. Bellamy and Elizabeth P. Sanderlin, Committees for Peters (hereinafter, the claimant or Peters) filed suit based on negligence against the insured seeking damages for their ward's personal injuries.

In March 1989, the insured (including Nathan Bottoms and other church trustees) filed the present declaratory judgment action against the insurer. The insured alleged that the insurer, relying on a policy exclusion, had refused to provide a defense to the insured in the tort litigation and had advised that no coverage would be afforded in regard to any judgment that might be rendered in favor of the claimant. The insured asked the court to declare that the policy requires the insurer to provide a legal defense and to cover any judgment the claimant may obtain against it. The insurer then filed a third-party motion against the claimant, asserting that the claimant was a necessary party to the declaratory judgment action.

Following an August 1989 hearing, the trial court ruled that the policy required the insurer to provide a defense in the tort litigation but withheld a ruling on the coverage question. In February 1991, a bench trial was held on the coverage issue. The insured, the insurer, and the claimant joined in a stipulation of facts. In addition, the trial court heard the testimony of two witnesses.

Upon consideration of the evidence and argument of counsel, the trial court ruled "that the exclusion in question does not exclude from coverage the claims set forth in the underlying" litigation and that the insurer is obligated to "defend and provide coverage" for the underlying claims consistent with other provisions of the insurance policy. The insurer appeals the March 1991 final order.

According to the stipulation, Peters had been a resident of the Home for about six years at the time of the accident in question. She had "organic brain syndrome," difficulty in moving, and loss of memory. She was ambulatory but tended to "wander off" unless supervised. She was unable to bathe herself, unable to care for her "toileting needs" unassisted, unable to groom herself, and unable to dress unassisted.

On the day in question, a nurse's aide employed by the Home assisted Peters into a bathroom about 7:30 p.m. to prepare her for bed. As part of the routine, the aide intended to help Peters in using the toilet, "to hand wash her at the sink and dry her, apply bath powder, dress her in clean pajamas and then assist her into bed."

After the aide had removed soiled clothing worn by Peters and assisted her onto the commode, another less disabled resident entered the room to bathe. The aide left Peters sitting on the commode while she carried the soiled clothing to a laundry room.

Upon returning to the bathroom about 20 minutes later, the aide found Peters standing in an agitated state with red areas on her body. She had sustained first and second degree burns on her back, neck, arms, and buttocks which required hospitalization. In the tort litigation, the claimant alleged she was burned by extremely hot water from the bathtub or shower.

As we have said, the Home was a "home for adults." As pertinent here, such a home is defined as "any place, establishment, or institution, public or private . . . operated or maintained for the maintenance or care of four or more adults who are aged, infirm or disabled." Code § 63.1-172(A). The statute provides that "maintenance or care" means "the protection, general supervision and oversight of the physical and mental well-being of the aged, infirm or disabled individual." § 63.1-172(B).

The Home is not a "nursing home." A nursing home is defined as "any facility . . . in which the primary function is the provision, on a continuing basis, of nursing services and health-related services for the treatment and inpatient care of two or more nonrelated individuals, including facilities known by varying nomenclature or designation such as convalescent homes, skilled nursing facilities or skilled care facilities, intermediate care facilities, extended care facilities and nursing or nursing care facilities." Code § 32.1-123. According to the pastor of Zion Baptist

Church, the Home provides no health care or medical treatment for its residents.

The portion of the insurance contract at issue is titled "Owners', Landlords' and Tenants' Section II Coverage." Under the title is this label: "Coverage for Designated Premises and Related Operations in Progress Other Than Structural Alterations, New Construction and Demolition."

■ As pertinent, the insuring agreement provides: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto."

The policy contract also contains "Section II Additional Exclusions." Exclusion A, at issue here, is labelled "Malpractice and Professional Services." It provides: "The following modifies such insurance as is afforded by the provisions of the policy relating to the following: . . . Owners', Landlords' and Tenants' Liability Insurance."

■ The specific language of the exclusion reads: "It is agreed that with respect to any operation described below or designated in the policy as subject to this form, the insurance does not apply to bodily injury . . . due to . . . the rendering of or failure to render . . . any service or treatment conducive to health or of a professional nature."

Following the pre-printed words of the exclusion "Description of Operations:" is typed "Nursing Home." Elsewhere, the policy contains typed language indicating that the "Occupancy" is "Nursing Home," and that the "Description of Hazards" is "Convalescent or Nursing Homes-not mental-psychopathic institutions."

On appeal, the insurer contends that the trial court erred in refusing to apply the exclusion, and in ruling that it had the duty to defend the underlying litigation and the obligation to afford coverage in the event of judgment against the insured. Contending that the language of the exclusion is plain and unambiguous, the insurer argues that Peters was injured, in the terms of the exclusion, when the Home's employee was "rendering . . . service or treatment conducive to health or of a professional nature." According to the insurer, it is "plain that bathing an elderly and

incompetent resident is a professional service conducive to her health."[1]

The insurer asserts that every allegation in the underlying negligence claim arises "out of the bath given to Mrs. Peters while she was under the care of employees of Zion Baptist." The insurer points out that, in the underlying claim, the claimant charges that the Home improperly trained its employees in the bathing of residents, negligently permitted Peters to sustain burns while bathing, negligently diagnosed and treated the burns, and failed to provide proper care for Peters. All of these allegations, the insurer contends, "pertain to the rendering of medical services and/or services conducive to Mrs. Peters' health and therefore are specifically excluded from coverage under Zion Baptist's policy."

■ We do not agree with the insurer. And because we will decide the coverage question against the insurer, it is unnecessary to discuss further the duty-to-defend issue; when an insurer owes coverage, *ipso facto* it has a duty to defend. *See Brenner* v. *Lawyers Title Ins. Corp.*, 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990).[2]

Recently, we summarized the principles applicable to cases of this kind.

> "Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies. *Johnson* v. *Insurance Co. of North America*, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986). Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous. *State Farm Mutual Ins. Co.* v. *Gandy*, 238 Va. 257, 261, 383 S.E.2d 717, 719 (1989). An ambiguity, if one exists, must be found on the face of the policy. *Nationwide*

---

[1] The insurer mistakenly refers to the fact that Peters was actually being bathed when she was injured. Although this mistake has no real bearing on the result in this case, the stipulation clearly states that the aide "intended" to bathe Peters; the actual bathing had not commenced.

[2] We find no merit in the insurer's assignment of error attacking the trial court's exclusion of certain proffered testimony of a registered nurse called by the insurer as an expert "in the field of adult . . . homes and care for the elderly." Rulings on whether a witness qualifies as an expert and whether the content of an expert opinion may be received in evidence are matters largely within the sound discretion of the trial court; there was no abuse of such discretion here.

*Mutual Ins. Co.* v. *Wenger*, 222 Va. 263, 268, 278 S.E.2d 874, 877 (1981). And, language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. *Lincoln National Life Ins. Co.* v. *Commonwealth Container Corp.*, 229 Va. 132, 136-37, 327 S.E.2d 98, 101 (1985). Finally, doubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it. *St. Paul Ins.* v. *Nusbaum & Co.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984)." *American Reliance Ins. Co.* v. *Mitchell*, 238 Va. 543, 547, 385 S.E.2d 583, 585 (1989).

■ We conclude, like the trial court, that the "conducive to health" language of this exclusion is ambiguous. Manifestly, the language is so broad that it may be understood in more than one way; indeed, it may be construed in many ways.

Initially, it must be remembered that the facility insured was an adult home, not a nursing home as erroneously noted throughout the policy. The significance of this fact is that we are dealing with a policy of premises liability insurance. The insuring agreement is labelled: "Coverage for Designated Premises and Related Operations in Progress." Thus, the nature of the premises, and the functions performed there, bear upon the coverage question.

■ As an adult home, its operators were licensed to maintain and care for aged, infirm, and disabled adults by giving such persons "protection, general supervision and oversight" of their "physical and mental well-being," in the words of the statute. The Home was not a "health care provider," as defined in Code § 8.01-581.1. *Commercial Distributors, Inc.* v. *Blankenship*, 240 Va. 382, 393, 397 S.E.2d 840, 846 (1990). As noted, the exclusion bars coverage for "bodily injury . . . due to . . . the rendering of or failure to render . . . any service or treatment conducive to health or of a professional nature."

The facts surrounding the occurrence show that Peters was left in the bathroom unattended for 20 minutes while another resident was present in the room. The facts do not show whether Peters was placed in the tub or assisted into the shower by the other resident, or whether Peters reached the hot water on her own. The insurer contends that when "an incompetent resident of an adult home is injured when left alone during a bedtime toileting and bathing procedure," coverage for that bodily injury claim is ex-

cluded as a "service conducive to health" under the terms of the policy.

The insurer conceded in the trial court, however, that the policy in question would provide coverage to residents injured in slips and falls on the premises, including a situation where a resident slipped and fell "on soapy water" negligently left in a hallway. But is it not "conducive to health" to keep hallways free of water and other impediments to safety? Also, if the Home maintained a secure roof so that a ceiling would not fall on a resident, would not that be "conducive to health" so that an injury resulting from a falling ceiling would be excluded from coverage? The argument could also be made that maintaining tub or shower water at a safe temperature is "conducive to health" and thus injury from use of scalding water is excluded from coverage. Indeed, one could reasonably argue that almost any condition or function of an adult home could be classified as "conducive to health" of the residents and, hence, any injuries negligently caused there are excluded from coverage.

■ Accordingly, because of the ambiguous, overbroad nature of the exclusion, we will construe the policy language in a manner which grants coverage, rather than one which withholds it. The judgment of the trial court, therefore, will be

*Affirmed.*