Present:  All the Justices

S. F. (JANE DOE), AN INFANT, ETC., ET AL.
                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 950120          November 3, 1995

WEST AMERICAN INSURANCE COMPANY

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John E. Clarkson, Judge

In this appeal of a declaratory judgment, we consider whether a provision in a liability insurance contract is ambiguous, and we must determine the amount of insurance available under the terms of the insurance contract to satisfy any judgments that may be entered against the insureds.

The West American Insurance Company filed its amended motion for declaratory judgment against numerous infants and their parents (collectively referred to as "claimants"), James E. Owens, William F. Weeks, Thomas A. Conner, Margaret Cody, Jean J. Ford, David L. Huffman, and Michael J. Coyle, trading as Harbor View Associates (collectively referred to as the "insureds"), and Century 21 Landmark Realty.  West American had issued a policy of liability insurance to the insureds who are the owners of Harbor View Apartments, located in Norfolk.

The claimants had filed seven separate lawsuits against the insureds.  The claimants alleged that the infant claimants were sexually assaulted and/or molested on multiple occasions by the insureds' resident manager, Charles Raymond Vette.  The claimants alleged that Century 21 Landmark Realty and the insureds were negligent in the hiring, selection, retention, and supervision of Vette and

Century 21 Landmark Realty, and that these parties "knew or should have known that Charles R. Vette had a history of criminal behavior, was a known child molester, had been convicted of child molestation and was on parole at the time of the hiring, and knew or should have known Charles R. Vette was unfit for the employment situation."

West American sought and obtained a declaration from the trial court that the claimants' claims which arose "from the alleged 'negligent hiring' of Vette[,] constitute[d] no more than a single 'occurrence' as defined by the Policy and applicable law" and, thus, West American's total potential exposure to all the claimants is limited to $1,000,000.  We awarded the claimants an appeal.

West American's policy of insurance contains the following provisions pertinent to this appeal:

### SECTION II--COMPREHENSIVE BUSINESS LIABILITY

The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury** . . . or **personal injury** caused by an **occurrence** to which this insurance applies.

The total liability of the Company for all damages, including . . . damages for care and loss of services, as a result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to each **occurrence**.

. . . .

The above limits shall apply regardless of the following:

1.   the number of persons or organizations insured under this policy;

2.   the number of persons or organizations who have sustained injury or damage;

3.   the number of claims made or causes of

> action or suits brought because of
> injury or damage.

> For the purpose of determining the limit of the
> Company's liability, all **bodily injury** and
> **property damage** arising out of a continuous or
> repeated exposure to substantially the same
> general conditions shall be considered as arising
> out of one **occurrence**.

Section II of the policy, which contains definitions, states

in pertinent part:

> **[O]ccurrence** means an accident, including
> continuous or repeated exposure to conditions,
> which results in **bodily injury** or **property damage**
> neither expected nor intended from the standpoint
> of the **insured** and with respect to **personal
> injury**, the commission of an offense, or a series
> of similar or related offenses.

The claimants contend that the policy's definition of

occurrence is ambiguous and, thus, this definition should be

construed so that the policy affords coverage to the

insureds. West American argues that its definition of

occurrence is unambiguous.

Recently, we stated the following principles which are

applicable here:

> An ambiguity, if one exists, must be found on the
> face of the policy. <u>Nationwide Mutual Ins. Co.</u> v.
> <u>Wenger</u>, 222 Va. 263, 268, 278 S.E.2d 874, 877
> (1981). And, language is ambiguous when it may be
> understood in more than one way or when it refers
> to two or more things at the same time. <u>Lincoln
> National Life Ins. Co.</u> v. <u>Commonwealth Container
> Corp.</u>, 229 Va. 132, 136-37, 327 S.E.2d 98, 101
> (1985). Finally, doubtful, ambiguous language in
> an insurance policy will be given an
> interpretation which grants coverage, rather than
> one which withholds it. <u>St. Paul Ins.</u> v. <u>Nusbaum
> & Co.</u>, 227 Va. 407, 411, 316 S.E.2d 734, 736
> (1984). <u>American Reliance Ins. Co.</u> v. <u>Mitchell</u>,
> 238 Va. 543, 547, 385 S.E.2d 583, 585 (1989).

<u>Granite State Insurance Co.</u> v. <u>Bottoms</u>, 243 Va. 228, 233-34,

415 S.E.2d 131, 134 (1992). Applying these principles, we

are of opinion that the definition of occurrence in West American's insurance contract is indeed ambiguous because it is susceptible to numerous interpretations. For example, within the factual content of the claimants' motions for judgment against West American's insureds, an occurrence could be deemed as any one of the following: the insureds' negligent hiring of Vette, or the insureds' negligent supervision of Vette, or the insureds' negligent retention of Vette. And, it is incumbent upon the insurer to use language sufficiently clear to avoid any such ambiguity if the insurer desires to limit its coverage. See St. Paul Insurance, 227 Va. at 412, 316 S.E.2d at 736.

Because the definition of occurrence is ambiguous, we must construe the policy in favor of the insureds and, thus, we hold that the trial court erred by declaring that the insurer's total potential exposure to the claimants is limited to $1,000,000. Now, we must now determine the maximum amount that the policy of insurance obligates the insurer to pay to the claimants on behalf of its insureds in the event a judgment is entered against them.

West American's declarations page provides a $1,000,000 limitation of liability for each occurrence. And, as quoted above, the insurance contract contains the following pertinent provision: "For the purpose of determining the limit of the Company's liability, all **bodily injury** and **property damage** arising out of a continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**." Each

infant claimant was allegedly subjected to Vette's repeated acts of sexual molestation, and the injuries resulting from those acts arose out of a "continuous or repeated exposure to substantially the same general conditions."  Thus, even though each infant claimant was subjected to several acts of sexual molestation, under the terms of the insurance contract, these acts constitute only one occurrence per infant claimant.  Therefore, we hold that the insurance contract requires West American to pay on behalf of its insureds all sums which the insureds shall become legally obligated to pay to the claimants for an amount not to exceed $1,000,000 for each infant claimant.  West American's total potential exposure to all the claimants cannot exceed a maximum total of $7,000,000.

Accordingly, we will reverse the judgment of the trial court and enter a final judgment here declaring that the insurer must pay on behalf of the insureds all sums which they shall become legally obligated to pay in an amount not to exceed $1,000,000 for each infant claimant.

<u>Reversed and final judgment</u>.