PRESENT:  All the Justices

VIDEO ZONE, INC.

v.  Record No. 031486    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                          April 23, 2004
KF&F PROPERTIES, L.C.

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge


In this appeal, we consider whether the circuit court erred in holding that the terms of a commercial lease required a tenant to replace certain heating, ventilation, and air conditioning (HVAC) equipment located primarily on the roof of the leased premises.

The following facts are relevant to this appeal.  KF&F Properties, L.C. (KF&F), owns the Rodman Shopping Center in the City of Portsmouth.  In 1996, KF&F leased certain property within the shopping center to Video Zone, Inc. (Video Zone), for the purpose of operating a "video store" on the premises.  The lease had an initial term of five years and was renewed in 2001 for a second five-year term.

The leased property included HVAC equipment.  Although some of the HVAC equipment was installed in the interior of the building, the major component of the system was located on the roof.

The lease provision addressing the maintenance of the property, including the HVAC equipment, stated in relevant part:

> MAINTENANCE. Lessor covenants that it will, at its own expense, keep and maintain the exterior of the said building, roof and parking facilities, in good order and repair . . . . Lessee covenants that at its own expense, it will keep and maintain in good order and repair the entire interior of the said building, including all plumbing, heating, cooling (Lessor will maintain cooling and heating during the first year) and electrical equipment.

Throughout the term of the lease, Video Zone paid for the repair and maintenance of the HVAC equipment installed on the leased premises, including the HVAC equipment located on the roof. In 2002, however, the HVAC system totally malfunctioned.

Dan Korzeniowski, Video Zone's president, obtained several price quotations for replacing the HVAC equipment. After concluding that the quoted prices were too high, Korzeniowski asked the managing partner of KF&F, J. Ovid Keene, to obtain a price estimate for a replacement system. Korzeniowski thought that Keene could obtain a "better price" based on his business "contacts."

Keene received a bid from Professional Heating and Cooling, Inc. (Professional), to replace the HVAC equipment at a cost of $8,939. This price was lower than the estimates obtained by Korzeniowski.

Professional replaced the entire HVAC system. Most of the equipment replaced was located on the roof of the building. The only work that Professional conducted in the interior of the

building was "ductwork and work to bring the HVAC system up to building code requirements."

Professional submitted an invoice to Keene in the amount of $8,939, which KF&F paid. KF&F then requested reimbursement from Video Zone for the full amount of the invoice. At that time, Video Zone no longer employed Korzeniowski and, under the direction of a new president, refused KF&F's request for reimbursement of the invoice amount.

KF&F filed a warrant in debt in the City of Portsmouth General District Court (the district court) seeking to recover $8,939 from Video Zone for its failure to reimburse KF&F for the cost of replacing the HVAC equipment. The district court awarded KF&F $650 plus costs. KF&F appealed from the district court's judgment to the Circuit Court of the City of Portsmouth.

At a trial de novo in the circuit court, Keene testified that when he informed Korzeniowski of Professional's bid, Korzeniowski agreed that KF&F would contract for the HVAC replacement work and that Video Zone would reimburse KF&F for the cost of that work. Keene also stated that Video Zone drafted the lease and that neither he nor anyone employed by KF&F participated in the drafting process.

Korzeniowski testified that he never agreed to pay KF&F for the cost of the replacement equipment. Korzeniowski further

3

stated that he did not draft the lease and that Keene had produced the lease at the time the parties signed it.

James Hensley, a vice president of Professional, testified that he inspected the malfunctioning HVAC equipment at Keene's request. Hensley stated that while the HVAC equipment could have been repaired, such repairs would not have been cost effective "given the age and condition of the equipment." Hensley further stated that the "most cost effective approach was to replace the HVAC equipment."

The circuit court held in favor of KF&F and entered judgment against Video Zone in the amount of $8,939, plus costs and interest. The court held that the language of the lease was "potentially ambiguous" and concluded that the parties' actions "indicated that they understood the [lease] to mean that Video Zone was responsible for all HVAC equipment wherever it was located." In support of its finding concerning the parties' intent, the court cited Korzeniowski's actions in obtaining estimates for replacing the equipment and in paying for past repairs as evidence that Video Zone understood that it was responsible for replacing the HVAC equipment. The court also concluded that the phrase "keep and maintain in good order and repair" required Video Zone not only to repair the HVAC equipment, but also to "maintain the equipment in good working

4

order, including replacing the equipment, if necessary." Video Zone appeals.

Video Zone argues that the circuit court's holding is contrary to the lease terms, which are unambiguous and do not make Video Zone responsible for replacement of the HVAC equipment. Video Zone contends that because KF&F was obligated under the lease to maintain and repair the exterior of the building, that obligation included replacement of the HVAC equipment located on the building's roof.

In response, KF&F also argues that the lease terms are unambiguous, but claims that these terms required Video Zone to replace the HVAC equipment in order to meet its duty to maintain that equipment in a state of good order and repair. Alternatively, KF&F contends that even if the lease terms are ambiguous, the circuit court made a factual finding that the parties intended that Video Zone replace the HVAC equipment irrespective whether the equipment was located in the interior or on the exterior of the building. KF&F asserts that the evidence supported the circuit court's finding that Video Zone agreed to pay for the cost of replacing the HVAC equipment.

In resolving this issue, we first consider the circuit court's holding that the lease terms are ambiguous. The issue whether a contract provision is ambiguous presents a question of law, not of fact. Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d

5

507, 509 (2003); Pyramid Dev., L.L.C. v. D&J Assocs., 262 Va. 750, 754, 553 S.E.2d 725, 727 (2001); Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C., III, 258 Va. 524, 528, 521 S.E.2d 761, 763 (1999). Therefore, on appeal, we do not accord the circuit court's resolution of this question any deference and we are afforded the same opportunity as the circuit court to consider the terms of the contract. Pyramid Dev., L.L.C., 262 Va. at 754, 553 S.E.2d at 727; Musselman v. The Glass Works, L.L.C., 260 Va. 342, 346, 533 S.E.2d 919, 921 (2000); Donnelly v. Donatelli & Klein, Inc., 258 Va. 171, 180, 519 S.E.2d 133, 138 (1999).

The language of a contract is ambiguous if "it may be understood in more than one way or when it refers to two or more things at the same time." Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 632, 561 S.E.2d 663, 668 (2002) (quoting Granite State Ins. Co. v. Bottoms, 243 Va. 228, 234, 415 S.E.2d 131, 134 (1992)); accord Westmoreland-LG&E Partners v. Virginia Elec. & Power Co., 254 Va. 1, 11, 486 S.E.2d 289, 294 (1997). Such an ambiguity, if it exists, must appear on the face of the instrument. Salzi v. Virginia Farm Bureau Mut. Ins. Co., 263 Va. 52, 55, 556 S.E.2d 758, 760 (2002); S.F. (Jane Doe) v. West Am. Ins. Co., 250 Va. 461, 464, 463 S.E.2d 450, 452 (1995). In determining whether the disputed terms are ambiguous, we consider the words employed in the contract in

accordance with their usual, ordinary, and popular meaning.  See Haisfield v. Lape, 264 Va. 632, 637, 570 S.E.2d 794, 796 (2002); Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal Corp., 263 Va. 169, 173, 556 S.E.2d 769, 772 (2002).

We conclude that the contested lease language is ambiguous because it can be understood in more than one way.  During the first year of the lease, KF&F was responsible, without any exception concerning equipment location, for the condition of all heating and cooling equipment.  After that first year, however, the lease language requires Video Zone to "keep and maintain in good order and repair the entire interior of the said building, including all . . . heating, [and] cooling . . . equipment."

On the other hand, the lease language also states that KF&F is responsible during the entire lease term for "the exterior of the said building, roof and parking facilities."  Thus, the lease assigns KF&F responsibility for the exterior of the premises, without stating whether that responsibility extends to the HVAC equipment located outside the building.  Conversely, the lease charges Video Zone with responsibility for the condition of the interior of the building, including all heating and cooling equipment, without specifying whether that responsibility extends to the HVAC equipment located on the exterior portion of the premises.  Accordingly, we hold that

7

these lease terms do not unambiguously indicate which party is responsible for the condition of the HVAC equipment located on the roof, and that the lease could be read to charge either party with that responsibility.

When the terms of an agreement are ambiguous, a court will consider parol evidence to ascertain the intent of the parties. Eure, 263 Va. at 632, 561 S.E.2d at 667-68; Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996). Parol evidence "is admissible, not to contradict or vary contract terms, but to establish the real contract between the parties." Id.; accord Prospect Dev. Co. v. Bershader, 258 Va. 75, 84, 515 S.E.2d 291, 296 (1999). Such construction of an ambiguous contract is a matter submitted to the fact finder, who must consider the extrinsic evidence in determining the parties' intent. Tuomala, 252 Va. at 374, 477 S.E.2d at 505; Cascades N. Venture Ltd. P'ship v. PRC Inc., 249 Va. 574, 579, 457 S.E.2d 370, 373 (1995).

Generally, the parties' interpretation and dealings with regard to contract terms are entitled to great weight and will be followed unless doing so would violate other legal principles. Donnelly, 258 Va. at 186, 519 S.E.2d at 142; Federal Ins. Co. v. Starr Elec. Co., 242 Va. 459, 467, 410 S.E.2d 684, 688 (1991); Dart Drug Corp. v. Nicholakos, 221 Va. 989, 995, 277 S.E.2d 155, 158 (1981); First Nat'l Exch. Bank of

8

<u>Roanoke v. Roanoke Oil Co</u>., 169 Va. 99, 115, 192 S.E. 764, 771 (1937). Thus, uncertain rights of parties may be determined and fixed by their practical dealings with each other. <u>John H. Maclin Peanut Co. v. Pretlow & Co.</u>, 176 Va. 400, 410, 11 S.E.2d 607, 611 (1940); <u>First Nat'l Exch. Bank of Roanoke</u>, 169 Va. at 115-16, 192 S.E. at 771.

Here, the circuit court determined the rights of the parties in accordance with their practical dealings. The court concluded that the parties' actions demonstrated their understanding that Video Zone was responsible for the condition of the HVAC equipment, including the equipment located on the roof, and was obligated to replace the HVAC equipment if necessary. The court's holding was supported by Keene's testimony that Video Zone agreed to reimburse KF&F for the cost of replacing the HVAC equipment. The holding further was supported by Korzeniowski's testimony that Video Zone paid for prior maintenance of the equipment located on the roof, and that when the equipment totally malfunctioned, he obtained several price estimates for replacing the system.

Because there is evidence to support the circuit court's factual finding concerning the parties' intent, we are required to affirm the court's judgment.[*]  <u>See</u> Code § 8.01-680; <u>Shooting</u>

---

[*] Our conclusion is not altered by Video Zone's contention that such a result would be "illogical" because the lease

9

Point, L.L.C. v. Wescoat, 265 Va. 256, 264, 576 S.E.2d 497, 501 (2003); Tauber v. Commonwealth, 263 Va. 520, 526, 562 S.E.2d 118, 120 (2002); Tuomala, 252 Va. at 375, 477 S.E.2d at 506. This determination renders it unnecessary for us to consider the circuit court's interpretation of the phrase "keep and maintain in good order and repair," or the court's interpretation of that phrase in relation to our decision in Seoane v. Drug Emporium, Inc., 249 Va. 469, 457 S.E.2d 93 (1995).

For these reasons, we will affirm the circuit court's judgment.

Affirmed.

---

provides that all fixtures owned by Video Zone remain its property and may be removed from the premises after the original lease term.  The ownership of the HVAC equipment is not a subject of this appeal, and we will not engage in a speculative discussion of that issue.