COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, Lorish and Callins
Argued at Lexington, Virginia

GARLAND L. BOWMAN, II

                                          MEMORANDUM OPINION* BY
v.        Record No. 1256-22-3            JUDGE LISA M. LORISH
                                          NOVEMBER 21, 2023
STATE FARM FIRE AND CASUALTY COMPANY

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Onzlee Ware, Judge

Dennis P. Brumberg (BWLAW PLC, on briefs), for appellant.

David R. Berry (Guy M. Harbert, III; Monica Taylor Monday;
Gentry Locke, on brief), for appellee.


After Garland L. Bowman, II's home was severely damaged by fire, he filed a claim with

his insurer, State Farm Fire and Casualty Company.  Under his policy, Bowman was entitled to

receive the "actual cash value" of the damage to his home until "repair or replacement" was

completed, at which point State Farm would reimburse him for repair or replacement costs if

they exceeded the actual cash value.  While the policy did not state that repair or replacement

must be completed within two years of the date of loss, the policy did include a limitation on

"[s]uit[s] [a]gainst [u]s."  It stated that "[n]o action shall be brought [against State Farm] unless

there has been compliance with the policy provisions and the action is started within two years

after the date of the loss or damage."

State Farm paid Bowman the actual cash value of the damage to his home and then told

Bowman that he had to complete any repair or replacement within two years of the date of the

* This opinion is not designated for publication.  See Code § 17.1-413(A).

loss.  Just before the two-year mark, Bowman filed an action for declaratory relief, asking the circuit court to interpret the insurance policy and hold that State Farm could not refuse to make payments for repair or replacement costs incurred after two years from the date of loss.  State Farm demurred, arguing that Bowman could not bring a suit unless he had complied with the policy, which required him to complete repairs or replacement within two years.  Because he had not done so, State Farm argued there was no justiciable controversy.  The circuit court agreed. We conclude that whether Bowman failed to comply with the policy cannot be determined from the face of the complaint.  Accordingly, we reverse and remand for further proceedings.

BACKGROUND

We consider the facts as stated in the complaint, "along with those reasonably and fairly implied from them, in the light most favorable to the plaintiff." *Doe v. Zwelling*, 270 Va. 594, 597 (2005).

Bowman purchased a rental dwelling policy from State Farm.  As required by Code § 38.2-2105, the policy includes the following: "Suit Against Us.  No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the date of the loss or damage."  The first page of the policy lists numerous included forms, options, and endorsements and states that "[y]our policy consists of this page, any endorsements and the policy form."  One such endorsement, the "Extra Replacement Cost Coverage Endorsement," states that "[w]e will settle covered losses for the amount you actually and necessarily spend to repair or replace the dwelling . . . , up to the applicable limit of liability shown in the Declarations."  Pertaining to loss settlement, the endorsement stated, "Buildings under Coverage A . . . at replacement cost without deduction for depreciation, subject to the following . . ."

(2) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smaller of the following amounts:

(a) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises;

(b) the amount actually and necessarily spent to repair or replace the damaged building; or

(c) the limit stated in the Extra Replacement Cost Coverage provision.

(3) We will pay the actual cash value of the damage to the buildings or other structures, up to the policy limit, until actual repair or replacement is completed.

Nothing in the endorsement, or the policy, states that repairs or replacement need to be completed within any specified period.

Bowman's house was severely damaged by fire on March 24, 2020, and he made a timely claim to State Farm under his policy. State Farm began to investigate, and in October 2020, provided Bowman a first estimate of the cost to repair his house, as well as an initial actual cash value payment. In addition to enclosing a 60-page breakdown of estimated repair costs by room and item, the letter attached an "Explanation of Building Replacement Cost Benefits" form, which stated that "[t]o receive replacement cost benefits you must . . . [c]omplete the actual repair or replacement of the damaged part of the property within two years of the date of loss." The original policy did not list or attach this form.

A year later, in October 2021, State Farm provided a written notification to Bowman, in compliance with Virginia Department of Insurance regulations, to explain that his claim had not been concluded because "[t]he requested engineer inspection report has been received and is currently under review." In November 2021, State Farm provided an additional actual cash value payment along with an updated, and increased, total amount of claim based on an updated

60-page repair estimate. This letter provided another copy of the "Explanation of Building Replacement Cost Benefits" form.

On February 23, 2022, State Farm wrote to Bowman summarizing the status of his claim to date and stating that Bowman's policy "outline[s] a timeframe for bringing action related to this loss," and then quoting the "Suit Against Us" language. The letter concludes with State Farm stating that "[t]he Company does not intend, by this letter, to waive any policy defense in addition to those stated above, but specifically reserves its right to assert such additional policy defenses at any time."

Bowman filed his complaint on March 22, 2022, seeking a declaration that "State Farm may not as of March 25, 2022, restrict Bowman to payments for the actual cash value of the damaged part of the property, which may include a deduction for depreciation, as opposed to replacement cost benefits up to the policy limits." He attached a copy of each of the documents mentioned above and alleged that, given the nature of the damage and the amount of time State Farm took to investigate the claim, it would "not be possible" to complete the repairs within two years of the date of loss. Bowman also alleged that the two-year limit was "not detailed or mentioned in the Policy."

State Farm demurred, arguing that Bowman could not maintain an action because he had not complied with the policy provisions regarding replacement cost coverage, which required repairs or replacement to be completed within two years of the loss, and because more than two years had now elapsed since the loss. State Farm asserted that Bowman's failure to repair or replace the property within two years meant that there was no actual controversy between the parties because Bowman could no longer sue State Farm to reimburse him for any repair or replacement costs he could incur in the future.

The circuit court agreed and sustained the demurrer because "Bowman seeks to enforce payment beyond the scope of his insurance policy" and that therefore "[h]e has no justiciable interest as there is no actual controversy." The court also observed that "Bowman filed the instant action on March 22, 2022, within the two year time frame, but he was out of compliance with his policy for failure to complete the repairs and/or replacement" and that "[e]ven if Bowman has now or eventually completes the repairs and/or replacement to the property, any subsequent action for the value is barred for failure to institute suit for them within two years of the date of loss."

Bowman appeals.

ANALYSIS

Bowman argues that the circuit court erred in sustaining State Farm's demurrer because his request for declaratory relief concerning State Farm's obligation to pay replacement costs under Bowman's insurance policy presented a justiciable controversy. A demurrer tests the legal sufficiency of the facts alleged in a complaint, assuming that all facts alleged and all inferences fairly drawn from those facts are true. *Mansfield v. Bernabei*, 284 Va. 116, 120-21 (2012). "The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a . . . complaint, but only may determine whether the factual allegations of the . . . complaint are sufficient to state a cause of action." *Riverview Farm Assocs. Va. Gen. P'shp v. Bd. of Supervisors of Charles City Cnty.*, 259 Va. 419, 427 (2000). "This Court reviews a circuit court's decision to sustain a demurrer de novo." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021).

Deciding whether there is a justiciable controversy requires us to review the insurance policy between Bowman and State Farm. The interpretation of a contract, and whether it is

ambiguous, is a question of law that this Court reviews de novo. *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631 (2002).

A justiciable controversy is a prerequisite to a circuit court's statutory authority to issue declaratory relief. *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, 285 Va. 87, 98 (2013). A circuit court has statutory authority to issue declaratory relief, making "'binding adjudications of right' in cases of 'actual controversy' when there is 'antagonistic assertion and denial of right.'" *Miller v. Highland Cnty.*, 274 Va. 355, 369-70 (2007) (quoting Code § 8.01-184). "If there is no actual controversy between the parties regarding the adjudication of rights, the declaratory judgment is an advisory opinion that the court does not have jurisdiction to render." *Charlottesville Area Fitness Club Operators Ass'n*, 285 Va. at 98. At its core, this requirement ensures that there are "specific adverse claims," *City of Fairfax v. Shanklin*, 205 Va. 227, 229 (1964), and that "the parties to the proceeding shall be adversely interested in the matter as to which the declaratory judgment is sought," *Patterson v. Patterson*, 144 Va. 113, 120 (1926). In addition, "a controversy is 'justiciable' only if the claim is 'based upon present rather than future or speculative facts, [that] are ripe for judicial adjustment.'" *Martin v. Garner*, 286 Va. 76, 83 (2013) (alteration in original) (quoting *Blue Cross & Blue Shield of Virginia v. St. Mary's Hosp. of Richmond, Inc.*, 245 Va. 24, 35 (1993)).

The purpose of a declaratory judgment is "to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." Code § 8.01-191. Courts must interpret the statute "liberally" and administer it "with a view to making the courts more serviceable to the people." *Id.* But the "case-specific equilibrium where a declaratory-judgment action serves its intended purpose without going too far or not going far enough" is not always clear. *Ames Ctr., L.C. v. Soho Arlington, LLC*, 301

Va. 246, 254 (2022). "[S]ome perspicacity is required to determine whether such danger [to one's legal rights] is hypothetical or imaginary only or whether it is actual and material." *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 335 (1983) (quoting E. Borchard, *Declaratory Judgments* 637 (2d ed. 1941)).

Bowman argues that he asked the circuit court for declaratory relief to settle a justiciable controversy—whether his insurance policy requires State Farm to pay for replacement costs[1] that are incurred more than two years after the date of loss. State Farm disagrees, pointing to the policy language that permits Bowman to bring a suit against State Farm only if Bowman has complied with his obligations under the policy. Because Bowman failed to incur replacement costs within two years—required under the policy according to State Farm—State Farm argues Bowman's suit for declaratory relief is not justiciable. Here, uncontroverted facts and the plain language of the policy lead us to conclude that the dispute between the parties is an "actual" or "justiciable" controversy.

Central to the "actual controversy" determination is whether Bowman complied with the insurance policy, and that depends on an interpretation of the policy itself. On the one hand, the policy states that State Farm will "pay the actual cash value of the damage to the buildings or other structures, up to the policy limit, until actual repair or replacement is completed," without

---

[1] "Replacement cost coverage was devised to remedy the shortfall in coverage which results under a property insurance policy compensating the insured for actual cash value alone." Steven Plitt et al., 12A *Couch on Insurance* § 176:56 (3d ed.). "[A] standard policy compensating an insured for the actual cash value of damaged or destroyed property makes the insured responsible for bearing the cash difference necessary to replace old property with new property." *Id.* However, "replacement cost insurance allows recovery for the actual value of property at the time of loss, without deduction for deterioration, obsolescence, and similar depreciation of the property's value." *Id.*

any express requirement that repairs be completed within a certain period of time.[2]  According to the complaint, the first time Bowman was informed that he had to make repairs within two years for State Farm to reimburse him was in the "Explanation of Building Replacement Cost Benefits" form that State Farm sent after he submitted his claim.  This form was not part of the policy itself.  On the other hand, the policy itself states that "[n]o action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the date of the loss or damage."  State Farm infers from this provision a requirement that all repairs or replacement costs had to be made within two years.

In interpreting a contract, we must "construe it as written" and "not add terms the parties themselves did not include."  *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 283 Va. 624, 636 (2012) (quoting *Landmark HHH, LLC v. Gi Hwa Park*, 277 Va. 50, 57 (2009)).  We are prohibited from "insert[ing] by construction, for the benefit of a party, a term not express in the contract."  *Id.* (quoting *Lansdowne Dev. Co., L.L.C. v. Xerox Realty Corp.*, 257 Va. 392, 400 (1999)).  We are also mindful of the "well-established principle that conflicting provisions in insurance policies must be construed in favor of coverage."  *Id.* at 633.  Our courts "have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it."  *Copp v. Nationwide Mut. Ins. Co.*, 279 Va. 675, 681 (2010) (quoting *Seals v. Erie Ins. Exch.*, 277 Va.

---

[2] While not argued by the parties, we observe that insurers operating in Virginia are permitted to provide

> extended coverage endorsements where the insured may be indemnified for . . . the difference between the actual cash value of the property at the time of loss and the cost of repair or replacement of the property on the same site with new materials of like kind and quality, *within a reasonable time after the loss*, and without deduction for depreciation.

Code § 38.2-2119(A)(i) (emphasis added).

558, 562 (2009)). Indeed, it is "well-settled" that "[l]anguage in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 227 Va. 407, 411 (1984).

Applying these principles here, we find that the policy is ambiguous as to whether Bowman was required to incur all replacement costs within two years. *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 234 (1992) ("[L]anguage is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time."). Because the plain language of the policy does not impose a time limit on reconstruction, it is not clear from the factual allegations in the complaint that Bowman was out of compliance with the policy at the time he filed his declaratory judgment action. *See Riverview Farm Assocs. Va. Gen. P'shp*, 259 Va. at 427 (explaining that at the demurrer stage, the court may only determine "whether the factual allegations of the . . . complaint are sufficient to state a cause of action" and may not "evaluate and decide the merits of the allegations set forth" in the complaint). This ambiguity renders the case justiciable.[3]

A circuit court cannot resolve contractual ambiguity at the demurrer stage. *Greater Richmond Civic Recreation, Inc. v. A.H. Ewing's Sons, Inc.*, 200 Va. 593, 596-97 (1959). "The construction of an ambiguous contract is a matter submitted to the trier of fact, who must examine the extrinsic evidence to determine the intention of the parties." *Tuomala v. Regent Univ.*, 252 Va. 368, 374 (1996). At trial, "parol evidence is admissible, not to contradict or vary contract terms, but to establish the real contract between the parties." *Id.*; *see also Vega v.*

---

[3] Our dissenting colleague points to Bowman's admission that it would not be possible to complete the repair or replacement within two years of the date of loss, and labels the same a concession that Bowman failed to comply with the policy. But this assumes the policy unambiguously required Bowman to incur such costs within two years. To the contrary, we find the contract ambiguous on this point and disagree with our colleague's assessment that "any purported ambiguity with respect to whether the policy does or does not impose a time limit for repair or replacement is irrelevant."

- 9 -

*Chattan Assocs., Inc.*, 246 Va. 196, 201-02 (1993) (holding that where "seemingly conflicting provisions" in a contract "created an ambiguity," it was "for the jury to resolve the conflict" by evaluating parol evidence).

Finally, we conclude that Bowman does not ask us to resolve a claim based on "uncertain and contingent events that may not occur at all." 26 C.J.S. *Declaratory Judgments* § 27 (2022). State Farm's repeated assertions that Bowman had to complete repair and replacement within two years to receive reimbursement—a position State Farm has continued to press on appeal— satisfies the requirement that Bowman's fear that State Farm will not reimburse him for costs incurred after two years is far from a hypothetical one. Declaratory relief was designed to afford individuals like Bowman "relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." *Hoffman Fam., L.L.C. v. Mill Two Assocs. P'ship*, 259 Va. 685, 693 (2000) (quoting Code § 8.01-191).

Given the ambiguity of the insurance policy, the circuit court erred in sustaining State Farm's demurrer. *Tuomala*, 252 Va. at 374. In reaching this conclusion, we note the position taken by the Oregon Court of Appeals after considering similar circumstances. That court explained that while "the terms of the no-action clause prohibit plaintiff from bringing suit if he had not complied with the policy provisions . . . that does not by itself establish that those provisions actually require plaintiff to complete reconstruction within two years of the date of loss." *Patton v. Mut. of Enumclaw Ins. Co.*, 337 P.3d 874, 882 (Or. Ct. App. 2014) (concluding that where the policy did not "specify an *express* limit . . . within which repair or replacement must be completed," the court would not infer one from a clause stating that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss"); *see also Bakos v. N.Y. Cent. Mut. Fire Ins. Co.*, 920 N.Y.S.2d

552, 554 (N.Y. App. Div. 2011) (denying insurer's motion to dismiss because "two-year limitation on legal action does not impose a time limit on reconstruction"). Indeed, State Farm's "argument to the contrary is circular." *Patton*, 337 P.3d at 882.

State Farm advances a second argument—that even if the court granted Bowman the relief he seeks and declared that the policy did not require Bowman to incur repair or replacement costs within two years of the loss, Bowman would not be able to bring a breach of contract suit against State Farm to enforce the same now that two years have passed. Thus, the same "Suit Against Us" clause effectively renders this action moot.

It is true that any subsequent action Bowman files against State Farm regarding his insurance policy risks dismissal under the "Suit Against Us" provision. It is also true that our Supreme Court has previously held that this language, required by Code § 38.2-2105, barred a suit brought against insurers filed after the two-year mark had passed. *Hitt Contracting, Inc. v. Indus. Risk Insurers*, 258 Va. 40 (1999).

Nonetheless, it is premature at this point to conclude that any action Bowman might bring would certainly be doomed to fail. Traditional contract doctrines like "waiver and estoppel can apply to contractual limitations periods in insurance policies when the facts support them." 44A Am. Jur. 2d Insurance § 1925. "Thus, an insurer may waive an insurance policy's contractual limitations period or may by its acts and conduct be estopped from asserting such provision as a defense to an action on the policy." *Id.*; *see Roenke v. Virginia Farm Bureau Mut. Ins. Co.*, 209 Va. 128, 134-35 (1968) (affirming that an insurance company could potentially waive a right bestowed by contract through express or implied conduct). In addition, the defense of "impossibility of performance is [also] an established principle of contract law." *Hampton*

*Roads Bankshares, Inc. v. Harvard*, 291 Va. 42, 53 (2016).[4]  Applying these traditional

doctrines, some courts have found exceptions to policy language expressly limiting an insurer's

obligation to pay repair or replacement costs.[5]  We do not decide here if any of those exceptions

applies.  The possibility that one might apply, however, suffices to assuage any concern that a

declaration of rights here would be wholly advisory.

---

[4] The Supreme Court has yet to rule out the possibility that an insured could advance impossibility as an exception to the "Suit Against Us" limitation.  While *Hitt Contracting* notes that "the possibility that in certain circumstances an insured might not be able to recover replacement costs incurred near or at the end of the two-year limitations period does not change the plain language" of the statute or policy, the Court noted "such circumstances are not presented in the instant case" because the claim was submitted and rejected before the two-year limitations period expired.  258 Va. at 47, 47 n.3.  In further contrast to this case, the policy there explicitly stated that coverage was "extended to cover such property to the amount actually expended by or in behalf of the Insured to repair, rebuild or replace within two (2) years from the date of loss or damage."  *Id.* at 44.  And instead of rejecting the general notion that impossibility could excuse a failure to perform under an insurance policy, in *Whitmer v. Graphic Arts Mut. Ins. Co.*, 242 Va. 349, 355-56 (1991), the Supreme Court rejected the fact-specific assertion by a particular insured that it was impossible for him to pay for the replacement without first receiving funds from his insurer, instead of expending the funds and being reimbursed later.

[5] *See, e.g.*, *McCahill v. Commercial Union Ins. Co.*, 446 N.W.2d 579, 585 (Mich. Ct. App. 1989) (insured excused from performing the condition precedent of completing the rebuilding or repair because insurer's actions hindered insured's performance); *Zaitchick v. Am. Motorists Ins. Co.*, 554 F. Supp. 209, 217 (S.D.N.Y. 1982) (finding caselaw and equitable considerations supported award of replacement costs under fire policy even though repair and replacement had not yet been completed), *aff'd sub nom. Zaitchick v. Am. Motors Ins.*, 742 F.2d 1441 (2d Cir. 1983); *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 180 Cal. Rptr. 3d 683, 696 (Cal. Ct. App. 2014) ("When an insurer's decision to decline coverage materially hinders an insured from repairing damaged property, procedural obstacles to obtaining the replacement cost value should be excused."); *Baluk v. New York Cent. Mut. Fire Ins. Co.*, 6 N.Y.S.3d 917, 918 (N.Y. App. Div. 2015) (reversing an insurer's motion to dismiss based on a provision similar to the "Suit Against Us" language because "[i]n certain circumstances . . . [i]t is neither fair nor reasonable to require a suit within two years from the date of the loss, while imposing a condition precedent to the suit . . . that cannot be met within that two-year period" (third alteration in original)); *Bailey v. Farmers Union Co-op. Ins. Co. of Neb.*, 498 N.W.2d 591, 598 (Neb. Ct. App. 1992) ("A condition is excused if the occurrence of the condition is prevented by the party whose performance is dependent upon the condition."); *Rockford Mut. Ins. Co. v. Pirtle*, 911 N.E.2d 60 (Ind. Ct. App. 2009) (affirming jury determination that insured was excused from completing repairs or replacement due to insurer's actions in handling insured's claim).

Here, we are presented with a specific adverse claim between parties that are adversely interested in the matter. State Farm has argued that the policy does not require it to reimburse Bowman for costs incurred after two years from the date of loss. As discussed above, the policy is ambiguous on this point. Should the factfinder conclude that the policy does not require Bowman to complete repairs within two years, and State Farm relies on the "Suit Against Us" provision and refuses to reimburse him, there is at least some possibility that Bowman might be entitled to relief. Therefore, the circuit court was wrong to conclude that there was no justiciable controversy presented here.

## CONCLUSION

For these reasons, we reverse and remand the circuit court's decision to sustain the demurrer.

*Reversed and remanded.*

Callins, J., dissenting.

This is a unique case, and I agree with the majority as to where its fulcrum lies. The case turns on whether Bowman was in compliance with his insurance policy. But unlike the majority, I would hold that because Bowman failed to comply with the policy, he did not plead in his complaint allegations sufficient to state a cause of action. *See Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 44 (2013) ("At the demurrer stage, it is not the function of the trial court to decide the merits of the allegations set forth in a complaint, but only to determine whether the factual allegations pled and the reasonable inferences drawn therefrom are sufficient to state a cause of action."). In the absence of such an actual controversy, Bowman cannot satisfy the sine-qua-non precondition for declaratory relief: a justiciable interest. *Cf. First Nat'l Trust & Sav. Bank v. Raphael*, 201 Va. 718, 721 (1960) ("It is true that the general rule is that in an action for a declaratory judgment, if the plaintiff's pleading alleges the existence of an actual or justiciable controversy it states a cause of action and is not demurrable.").

The majority finds that because the insurance policy imposes no time limit for repair or replacement costs, there exists a live question as to whether Bowman was out of compliance with the policy. It is this ambiguity, the majority holds, that makes this case justiciable. But any purported ambiguity with respect to whether the policy does or does not impose a time limit for repair or replacement costs is irrelevant, since Bowman's action was precluded by the terms of the policy regardless of whether the same requires expenses to be incurred within two years.

Bowman's suit implicated two groups of provisions in his insurance policy. First were the essential provisions establishing parameters for State Farm's payment of repair or replacement costs. Those provisions state,

> (2) We will pay the cost of repair or replacement, without deduction for depreciation, . . . [for] the amount actually and necessarily spent to repair or replace the damaged building
> . . . .

- 14 -

. . . .

> (3) We will pay the actual cash value of the damage to the
>     buildings or other structures, up to the policy limit, until actual
>     repair or replacement is completed.

Second was the policy's "Suit Against Us" provision, which states,

> No action shall be brought unless there has been compliance with
> the policy provisions and the action is started within two years
> after the date of the loss or damage.

Under the first group of relevant provisions, the policy specifies that to recover costs for repair or replacement an insured is required to incur actual and necessary amounts. The policy also requires that an insured complete "actual repair or replacement" and be in compliance with the policy to bring an action. Accepting as true the facts alleged in Bowman's complaint and all reasonable inferences deriving therefrom, *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 370-71 (2018), Bowman did not complete repairs to the property, nor did he contend incurring actual or necessary costs for the same. Indeed, Bowman's complaint alleged that "it will not be possible to complete the actual repair or replacement of the damaged part of the property within two years of the date of loss." Thus, Bowman conceded his failure to comply with the policy as required under the policy's "Suit Against Us" provision when he acknowledged in his complaint that he had not taken action for recovery under the repair or replacement provisions.

Instead, Bowman requested that the circuit court "hold that State Farm may not as of March 25, 2022, restrict Bowman to payments for the actual cash value of the damaged part of the property . . . as opposed to replacement cost benefits up to the policy limits." Bowman essentially sought to have the circuit court declare that *should* he, at *some point* in the future and beyond the two-year limit for action, decide to assert a claim compliant with recovery provisions of the policy, State Farm would be enjoined from denying it. In so doing, Bowman sought to have the circuit court do what it cannot: entertain a suit against State Farm where there has not

- 15 -

been compliance with the policy provisions that require funds "actually" be spent and that "actual repair or replacement" be "completed."

Further, because of the period of limitations imposed by the "Suit Against Us" provision, even if, in interpreting the policy, the circuit court had found that Bowman was not out of compliance with the policy's relevant provisions, Bowman is entirely barred from enforcing the policy in court. To seek declaratory relief, Bowman must have an underlying legal right that is recognizable by a court of law and able to give rise to a controversy. *See Morgan v. Bd. of Supervisors of Hanover Cnty.*, ___ Va. ___, ___ (Feb. 2, 2023) ("[T]he Declaratory Judgment Act provides a 'procedural remedy for the unripe, but *legally viable*, cause of action.'" (emphasis added) (quoting *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 318 (2016))). Even if that right is not yet ripe, it must eventually be justiciable in order for it to give rise to a right to bring a declaratory judgment action. *See Justiciable*, *Black's Law Dictionary* (11th ed. 2019) ("subject to proper resolution on the merits by a court of justice; capable of being disposed of judicially"). Here, that right would be to receive replacement costs for his repairs for the damaged property. Yet, with the two-year limitations period to bring an action having run, Bowman has no justiciable right to litigate against State Farm. And Bowman's right to bring a declaratory judgment action cannot be the subject of the controversy that gives him the authority to bring this action because that would create an absurdity. *See City of Charlottesville v. Payne*, 299 Va. 515, 532 (2021) ("An absurd result describes an interpretation that results in the statute being internally inconsistent . . . .").

Thus, I am compelled to find that *any* decision rendering judgment would change Bowman's substantive rights, something the declaratory judgment acts do not empower us to do. *See Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 419 (1970) ("The declaratory judgment acts do not create or change any substantive rights . . . ." (quoting 26 C.J.S. *Declaratory Judgments* § 7,

- 16 -

59-60)). What Bowman seeks is "procedural fencing" to bring his now barred action to court. *Green v. Goodman-Gable-Gould Co., Inc.*, 268 Va. 102, 107 (2004). And the majority's thought-exercise as to *potential* causes of action *possibly* available to Bowman in a *theoretical* collateral attack on a contract not otherwise subject to enforcement in an *unknown* future is illustrative of the perils of rendering advisory opinions. Such an opinion would change Bowman's substantive rights by altering their parameters and allow him to bring an otherwise incognizable claim into "the subject of judicial power." *See Liberty Mut. Ins. Co.*, 211 Va. at 419 (quoting 26 C.J.S. *Declaratory Judgments* § 7, 59-60).

In the end, Bowman failed to comply with the policy's repair and replacement provisions, which compliance was a prerequisite to bringing *any* action, including this one. Accordingly, even if Bowman's complaint were examined in the light most favorable to him, there is no actual controversy. That is, Bowman's failure to complete actual repairs or replacements, and thus, comply with his policy, was fatal to his suit, as it left him without a cause of action, and in turn, without allegations sufficient to survive State Farm's demurrer.

Finding that there is no controversy, I would affirm the judgment of the circuit court. It is for this reason that I respectfully dissent.