**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Plaintiff–Appellee,

v.

**POTOMAC INVESTMENT PROP-ERTIES, INCORPORATED,**
Defendant–Appellant.

No. 06–1187.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 24, 2006.

Decided Feb. 1, 2007.

**ARGUED:** James Bradford McCullough, Lerch, Early & Brewer, Chartered, Bethesda, MD, for Appellant. Joseph John Zimmerman, Washington Metropolitan Area Transit Authority, Office of General Counsel, Washington, D.C., for Appellee. **ON BRIEF:** Stanley J. Reed, Lerch, Early & Brewer, Chartered, Bethesda, MD, for Appellant. Carol B. O'Keeffe, General Counsel, Edward J. Maginnis, Associate General Counsel, Washington Metropolitan Area Transit Authority, Office of General Counsel, Washington, D.C., for Appellee.

Before WIDENER, KING, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge KING and Judge SHEDD concurred.

WIDENER, Circuit Judge.

This is a contract case. Plaintiff WMATA sued the defendant Potomac Investment Properties in the district court for the District of Maryland asking for a declaratory judgment that the contract between the parties has been fully performed and is no longer in force, an order to quiet title in the disputed parcel of land, and in the alternative for a rescission of the contract. The district court granted summary judgment to the plaintiff, and the defendant appealed. We have jurisdiction under 28 U.S.C. § 1291.

I.

Washington Metropolitan Area Transit Authority is an agency and instrumentality of the States of Maryland and Virginia and the District of Columbia. The agency was created by interstate compact, approved by Congress, and codified in Md.Code Ann. Transp. § 10–207. The compact confers jurisdiction over lawsuits to which WMATA is a party on United States District Courts. Md.Code Ann. Transp. § 10–207, Art. 81. WMATA is a plaintiff-appellee in the present action.

Potomac Investment Properties (Potomac or Potomac Investment) is a developer. Over the course of years, Potomac Investment and WMATA variously contracted with respect to some of WMATA's property adjacent to WMATA's Grosvenor–Strathmore station in Montgomery County, Maryland. One of the agreements between the parties with respect to

the part of the property involved in this litigation was a Right of First Refusal Agreement. The First Refusal Agreement gave preferential purchasing, leasing, and development rights to Potomac Investment. The relevant parts of the agreement follow:

1.2 Election to Purchase Lease or Develop. For a period of ninety (90) days following date of Notice ("the Notice Period"), Purchaser [Potomac Investment] shall have the exclusive option to purchase, lease or develop the Subject Interest specified in the Notice and Purchaser shall respond to WMATA pursuant to the terms stated in the Notice. If Purchaser elects to purchase, lease or develop the Subject Interest, it must so notify WMATA in writing (the "Exercise Notice") within said Notice Period. If Purchaser fails to send an Exercise Notice within said 90–day period it shall be deemed to have elected not to purchase, lease or develop the Subject Interest. If Purchaser sends an Exercise Notice in accordance with this Section 1.2, WMATA and Purchaser shall promptly negotiate a Letter of Intent and thereafter execute a Sales Agreement, Lease Agreement or Development Agreement with respect to the North Parcel [the Subject Property] pursuant to the terms set forth in the Notice. If the parties, acting in good faith, do not reach agreement on the terms of a Sales Agreement, Lease Agreement or Development Agreement within six months from the execution date of the Letter of Intent, this Right of First Refusal shall become null and void.

1.3 Sale, Lease or Right to Develop to Third Party. If Purchaser fails to exercise its right to purchase, lease or develop the subject Interest in accordance with the terms of this Agreement, or if Purchaser exercises its right to purchase, lease or develop but subsequently fails to purchase, lease or develop (via a development agreement) the Subject Interest within the time specified, then WMATA shall have the right, for nine (9) months after the expiration of the Notice Period, to obtain a bona fide, binding contract for that sale, lease or development of such Subject Interest to the third party on terms and conditions consistent with the Notice which are no less favorable to WMATA than those stated in the Notice. . . .

1.4 Reinstatement of Right of First Refusal. In the event WMATA fails within the time specified in Section 1.3 to consummate such proposed sale, lease or development agreement, or if the terms of such proposed sale, lease or development agreement shall be less favorable to WMATA than those stated in the Notice, WMATA shall, prior to any subsequent proposed sale, lease or development agreement of the Subject Interest, be required to extend to the Purchaser, and Purchaser shall have sixty (60) days within which to enter into a sales, lease or development agreement upon the same terms and conditions as WMATA has negotiated with the third party.

J.A. 16–17.

On January 26, 2001, WMATA gave Potomac Investment written notice that it intended to lease the property. On February 11, 2002, WMATA and Potomac Investment signed a Letter of Intent. On May 23, 2003, the parties entered into a Ground Lease Agreement.[1] The lease has two provisions relevant to this litigation. Section 2.02 of that lease states:

---

1. Although the lease was a lengthy document of more than 90 pages, the parties failed to agree on the fair market rental value and had that issue arbitrated. J.A. 145–150.

In accordance with the terms of this Lease, for sixty (60) day period following the Effective Date, Tenant [Potomac Investment] shall have a Study Period to conduct such tests, investigations and/or studies as Tenant deems necessary or desirable to evaluate the leased property (each, a "Study" and, collectively, the "Studies").... *On or before the sixtieth (60th) day of the Study Period, and consistent with Section 18.01, Tenant [Potomac Investment] may elect to terminate this Lease for any reason, or no reason, in Tenant's sole discretion.* Upon any such termination, the Security Deposit shall be promptly returned to Tenant, subject to Site Restoration, and WMATA and Tenant shall be released from any further liabilities and obligations under this Lease....

J.A. 60 (emphasis added).

Section 18.01 provided that

*If after concluding the Studies in accordance with Section 2.02 or after assessing the feasibility of the Project, Tenant [Potomac Investment], in its sole discretion, shall have the right to cancel this Lease by giving written notice to WMATA.* Cancellation of the Lease shall be effective the date of such notice. WMATA shall promptly return the Security Deposit to Tenant subject to Site Restoration and *neither party shall have any further obligation to the other, except for obligations, such as indemnification, that expressly survive termination.*

J.A. 118 (emphasis added).

The effective date of the lease was October 25, 2003. On December 15, 2003, Potomac Investment informed WMATA that it was exercising its rights under Section 2.02(A) of the ground lease to terminate the ground lease. J.A. 187 By the same letter, Potomac advised WMATA that it "reserves all rights it has under the Right of First Refusal Agreement...." WMATA responded by a letter dated December 15, 2003 that it believed that Potomac no longer had any rights under the First Refusal Agreement or any further liability to Potomac. On April 30, 2004, WMATA filed the present suit in the district court seeking a declaratory judgment and an order to quiet title.[2]

Both parties moved for summary judgment. The district court denied summary judgment to Potomac Investment and granted summary judgment to WMATA. Potomac Investment appealed.

On appeal, as it did below, Potomac Investment argues that by terminating the lease agreement, it "failed to lease" the subject property within the meaning of Section 1.3 of the First Refusal Agreement. Consequently, according to Potomac Investment, it is entitled to the benefit of a reinstated right of first refusal under Section 1.4 of the First Refusal Agreement.

## II.

We review a district court's grant of summary judgment de novo. *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 282 (4th Cir.2003).

The parties are in agreement that Maryland law governs this case. "Under Maryland law, the interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law." *Gresham v. Lumbermen's*

---

2. As an alternative remedy, in Count III, WMATA sought rescission of the First Refusal Agreement to the extent that the court believed that Potomac Investment retained any rights under that agreement. The district court granted Potomac Investment's motion to dismiss Count III on March 8, 2005. This decision is not appealed.

*Mut. Cas. Co.,* 404 F.3d 253, 260 (4th Cir.2005) (internal quotations omitted).

A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if susceptible to two reasonable interpretations. The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis. If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

*Goodman v. Resolution Trust Corp.,* 7 F.3d 1123, 1126 (4th Cir.1993) (internal citations and quotations omitted).

■ Therefore, summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence.

### III.

■ Maryland follows "the principle of the objective interpretation of contracts." *Walker v. Dep't of Human Res.,* 379 Md. 407, 842 A.2d 53, 61 (2004). Thus, "[t]he purpose of contract interpretation is to determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself." *Gresham,* 404 F.3d at 260.

■ Ultimately, the dispositive issue in the present case boils down to the question of whether or not Potomac Investment actually leased the subject property.

Potomac Investment argues that it merely entered into an agreement to lease, but subsequently failed to actually lease the property because it terminated the ground lease during the study period. Therefore, according to Potomac Investment, a failure to actually lease would trigger Section 1.3 of the First Refusal Agreement. Potomac argues that Section 1.3 was triggered, and, accordingly, WMATA had only nine months in which to negotiate with an alternate lessee. It argues that upon the expiration of this period, Potomac would enjoy a "reinstated right of first refusal" pursuant to Section 1.4 of the First Refusal Agreement.

WMATA, on the other hand, argues that under the very terms of the Ground Lease Agreement and by occupying the subject property between October 25, 2003 and December 15, 2003, Potomac Investment did enter into a lease, thus completing the sequence of events contemplated by Section 1.3 of the First Refusal Agreement. According to WMATA, the termination of the lease, and cancellation of the remainder of the lease, is not a failure to lease the property, rather it is a relief by Potomac Investment of long-term obligations consistent with the lease. Thus, according

to WMATA, the First Refusal Agreement was performed and Potomac Investment retained no rights under it.

WMATA has the better of the argument. Under the terms of the First Refusal Agreement, the following events needed to occur in order for the agreement to be fulfilled:

1. WMATA giving notice to Potomac Investment that it intends to lease the property; J.A.15

2. Potomac's exercise of its option to lease (made within 90 days from WMATA's notice); J.A.16

3. Signing of a letter of intent between WMATA and Potomac Investment; J.A.16

4. A period of negotiations not exceeding 6 months culminating in J.A. 16

5. An agreement to lease. J.A.16

If all of these events occurred, the First Refusal Agreement had been fully completed, and neither party had any remaining rights under it. However, if steps (1)-(4) were completed, but step (5) did not occur, then WMATA would have had nine months to negotiate with another party and upon the expiration of those nine months, Potomac Investment would have regained a reinstated right of first refusal as specified in Section 1.4 of the First Refusal Agreement.

A reinstated right of first refusal under Section 1.4 of the First Refusal Agreement, under the facts before us, would have occurred when Potomac, having exercised its refusal right, failed to consummate a lease agreement within six months after execution of the letter of intent.

A.

The exercise of the right of first refusal to lease occurred when Potomac Investment notified WMATA that it would like to enter into the negotiations on the terms of WMATA's offer. There is no dispute but that Potomac exercised its right of first refusal and entered into negotiations with WMATA. There is also no dispute but that these negotiations concluded with the signing of the ground lease agreement. Potomac Investment, however, argues that it did not actually lease the subject property and therefore is entitled to the reinstated right of first refusal. That contention is without merit.

Our conclusion that the subject property was actually leased from the date of the lease, and not from some future date is supported by the rights conferred upon Potomac Investment by the lease agreement. On October 25, 2003, WMATA delivered to Potomac possession of the subject property "free and clear of any and all tenancies and occupancies" as required by the lease. J.A. 141. As of that date, Potomac enjoyed a right to quiet enjoyment of the estate as well as a right to conduct whatever tests and studies it deemed appropriate. Potomac was not a trespasser on the property and WMATA had no right or authority (except insofar as provided for in the lease) to dispossess Potomac of its estate had it wished to do so. This is the very definition of a leasehold estate. *Restatement (Second) of Property,* for example, lists the following requirements for the formation of landlord-tenant relationship: (1) space having a fixed location, (2) transfer of the right of possession, and (3) legal capacity of each party to enter into the agreement. *Restatement (Second) of Property* §§ 1.1–1.3. Unquestionably, all of the above requirements have been met, and therefore, under the settled definition, Potomac did lease the subject property.

This is also illustrated by the cancellation provision § 18.01 in the lease which Potomac cancelled. "Cancellation of the Lease shall be effective the date of such notice." That notice was dated December

15, 2003, some 51 days after October 25, the effective date of the lease. Thus, Potomac Investment occupied the property under the lease for at least 51 days, proof positive of the existence of a lease.

### B.

▮ In the alternative, Potomac argues that the cancellation of the lease within the 60–day study period was tantamount to the rescission of the lease, and, therefore, Potomac cannot be deemed to have ever been a lessee. This argument fails.

As an initial matter, the provision of the ground lease that allows for cancellation interchangeably uses "cancellation" and "termination." Thus, in context of the ground lease agreement "cancellation" does not mean rescission, rather it means early, penalty-free termination of the agreement. Potomac relies on *Guardian Life Ins. v. U.S. Tower*, 122 Md.App. 550, 714 A.2d 204 (1998) in arguing that under Maryland law, "cancellation" and "rescission" are legally identical. In reaching this conclusion, Potomac misconstrues *Guardian Life.*

In *Guardian Life*, the court was not construing or defining the term "cancellation." 714 A.2d at 210. Instead, the court considered whether, as a matter of statutory construction, a provision in a Maryland insurance statute concerning "*statutory cancellation*" was intended to be the equivalent of a rescission. *Guardian Life, ante* at 210 (emphasis added). The court there held that in the context before it, the terms were synonymous. 714 A.2d at 210. The Maryland court quoted the following definition of "rescission of contract:"

> A 'rescission' amounts to the unmaking of a contract, or an undoing of it from the beginning, *and not merely a termination,* . . .

Thus, while the court found that in the context of the statute at issue, cancellation and rescission were synonymous, the court limited its conclusion to the particular statutory language before it. *Guardian Life, ante* at 210 ("*Under section 387C*, a party has ten days from receipt of the policy to 'cancel' the policy. The words 'cancel' and 'rescind,' *in this context*, are synonymous.")(emphasis added). Moreover, the definition of "rescission" quoted by the court in reaching its conclusion recognizes that while the terms "cancellation," "termination," and "rescission" are interrelated, they are not synonymous. In all events, the very policy involved provided that if returned under the statute, "The policy will be void from the beginning," 714 A.2d at 206, hardly a Maryland common law definition of rescission.

We thus conclude that the district court correctly held that *Guardian's* holding did not require a holding in this case that the ground lease agreement had been rescinded.

Because the language of the contract is unambiguous; the plain meaning of the terms "cancel" and "terminate" is simply "to end," and not "to treat as if it never existed;" and because the meaning Potomac proffers is not supported by Maryland law, we conclude that Potomac's cancellation of the contract was not the legal equivalent of a rescission. Thus, because the contract was terminated, and not rescinded, we conclude and hold that the lease actually occurred although its existence was only a matter of weeks.

Consequently, the conditions specified in the First Refusal Agreement have been met. Both sides performed under that agreement and no additional rights were retained by either party.

The judgment of the district court is accordingly

*AFFIRMED.*