**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-1346**

———————

2300 PENNSYLVANIA AVENUE, LLC,

                    Plaintiff - Appellee,

         v.

HARKINS BUILDERS, INC.,

                    Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.   Liam O'Grady, District
Judge.  (1:10-cv-01321-LO-IDD)

———————

Argued:  January 31, 2013            Decided:  March 4, 2013

———————

Before MOTZ, KING, and AGEE, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** William  Rutherford  Mauck,  Jr.,  SPOTTS  FAIN,  PC,
Richmond, Virginia, for Appellant.   Patricia Ann Millett, AKIN,
GUMP,  STRAUSS,  HAUER  &  FELD,  LLP,  Washington,  D.C.,  for
Appellee.  **ON BRIEF:** Mark S. Dachille, HUDDLES JONES SORTEBERG &
DACHILLE,  PC,  Columbia,  Maryland,  for  Appellant.   Hyland Hunt,
AKIN,  GUMP,  STRAUSS,  HAUER  &  FELD,  LLP,  Washington,  D.C.,  for
Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

2300 Pennsylvania Avenue, LLC, brought this action against Harkins Builders, Inc., alleging breach of contract, fraud, and negligence arising out of a contract for the construction of a building project in Washington, D.C. The district court granted summary judgment to 2300 as to Harkins' liability for liquidated damages. Following a bench trial, the court entered judgment for 2300, in the total amount of $3,922,189 in damages. Harkins appeals, raising several arguments. We affirm.

I.

In August 2008, 2300, as owner and developer, and Harkins, as general contractor, entered into a written contract for the construction of a mixed-use apartment and retail building project in Washington, D.C. The contract consisted of several documents, including AIA Document A101-1997, the "Standard Form of Agreement Between Owner and Contractor," AIA Document A201-1997, the "General Conditions of the Contract for Construction," and "Modifications issued after execution of" the A101-1997, which include the various numbered Change Orders.

A.

Relevant to this appeal, the contract requires windows

2

meeting the performance requirements of an "HC-70 window," a high-performance window. In December 2009, Harkins discovered some of the windows leaked. After initial remediation efforts failed, Harkins learned that a manufacturing defect caused the leaks. Between December 2009 and October 2010, Harkins and its subcontractors undertook at least five remediation efforts on the windows, testing after each remediation. These efforts involved drilling holes, injecting foam compound and seam sealer, applying new sealant and caulking, and installing redesigned sashes. On August 2, 2010, 2300 retained a testing agency that tested 24 window openings. Two openings failed but were remediated and tested with successful results that same day. At least as late as December 2010, the project architect observed some window leaks.

Also in December 2009, Harkins observed approximately twenty leaks in the garage walls. The leaks appeared at approximately the same height and in "pretty consistent intervals." Harkins' sub-contractor, Prospect Waterproofing Co., said that "capillary action" caused the uniform leaks in the walls and denied responsibility. Harkins accepted responsibility for the leaks; Prospect conducted the repairs. Despite several rounds of repairs, which included injecting cement and chemical grout in the leaking areas, the project architect continued to observe leaks in late 2010 and spring

3

2011.  The architect noted that the leak heights correlated to the approximate horizontal boundary between the two waterproofing systems.  In light of the "pattern created by the water penetration," the architect also determined that "the waterproofing in the garage was either damaged or not installed properly," due to "poor quality waterproofing, improper installation, or postinstallation damage."

The contract requires Harkins to achieve "Substantial Completion" of the entire building by April 25, 2010.  Under the contract, the architect's "Certificate of Substantial Completion shall establish the date of Substantial Completion."

The architect's certification must be made "in accordance with Section 9.8," which provides that the architect will determine that the building is substantially complete when it "is sufficiently complete in accordance with the Contract Documents so that [2300] can occupy or utilize the [building] for its intended use."  Substantial completion is to be determined building-wide, rather than on a unit-by-unit basis. Under the contract, Harkins is liable for liquidated damages if it did not achieve substantial completion by April 25, 2010.

The D.C. Department of Consumer and Regulatory Affairs issued a Certificate of Occupancy on February 25, 2010, and tenants began moving into units two days later.  A month later, on March 30, Harkins requested payment of a $150,000

4

"Substantial Completion Incentive Bonus" established by Change Order 9, which modified the liquidated damages and bonus provisions of the contract. In Change Order 91 dated April 23, 2010, the architect approved and 2300 agreed to pay Harkins a $150,000 bonus, which was called a "Certificate of Occupancy Bonus."

By letter dated July 13, 2010, Harkins requested that the architect issue the Certificate of Substantial Completion. On September 23, 2010, the architect issued the certificate, which set August 2, 2010 as the Date of Substantial Completion. The architect attached to the certificate a "punch list" of tasks that Harkins was to complete before final payment would issue. On October 5, 2010, Harkins advised 2300 that it would not execute the Certificate unless the Date of Substantial Completion was changed to April 25, 2010, and the punch list removed. 2300 did not do this but did execute the certificate on October 7, 2010.

B.

On November 19, 2010, 2300 filed a five-count complaint against Harkins in the United States District Court for the Eastern District of Virginia. In its complaint, 2300 alleged that Harkins breached its express and implied obligations to 2300 by furnishing deficient windows and damaged

5

garage waterproofing, and by failing to properly construct and install the roof, adhere to specified building dimensions required by federal law, timely complete the work, and submit required documentation to 2300. 2300 further alleged that Harkins failed to act in good faith and deal fairly with 2300, and breached its express and implied warranties under the contract. Finally, 2300 alleged that Harkins negligently "breached its duty to exercise reasonable care and competence by performing substandard and defective work."

Harkins answered the complaint and asserted a counterclaim for breach of contract, alleging that 2300 had withheld the $510,000 contract balance even though Harkins "fully and properly fulfilled all of its obligations under the contract." In March 2011, after being granted leave to do so, 2300 filed an amended complaint, adding a fraud count, which Harkins answered.

Shortly thereafter, upon the close of discovery, each party moved for partial summary judgment. The court granted summary judgment to 2300 as to liability on its liquidated damages claim, finding Harkins had failed to achieve substantial completion under the contract prior to August 2, 2010. The court denied the parties' remaining motions for summary judgment. After a bench trial, the court issued a memorandum opinion and order for judgment to 2300, finding that Harkins had

6

breached the contract with respect to the windows and waterproofing. The court further found that 2300 failed to demonstrate by a preponderance of the evidence that the roof did not meet contract specifications, but in light of the parties' agreement, found 2300 entitled to compensation to relocate the roof condenser. The court awarded 2300 damages in the amount of $3,922,189, which included $2,683,962 for window replacement, $210,000 for waterproofing repair and maintenance, $3,500 to relocate the roof condenser, $637,200 in liquidated damages, and $387,527 in associated fees and costs. As to 2300's fraud and negligence claims, the court awarded judgment to Harkins. The court rejected Harkins' counterclaim for recovery of the $510,000.00 contract balance and refused to credit the amount to Harkins.

Harkins timely noted this appeal.

II.

After carefully considering the record, the briefs, and the applicable law, and having the benefit of oral argument from the parties, we affirm the judgment in favor of 2300 for the reasons well-stated in the district court's memorandum opinion. We engage in further discussion only to address two issues: the district court's ruling on summary judgment, which was entered orally from the bench; and the calculation of

7

damages, which Harkins asserts must be remanded to address mathematical errors.

## A.

Under Change Order 9 of the contract, Harkins was "liable for and shall pay to the Owner . . . Liquidated Damages . . . if substantial completion has not been reached as per" the contract by a certain date. The parties' cross-motions for summary judgment on liability for liquidated damages focused on the definition of "substantial completion" under the contract.

We review de novo the district court's award of partial summary judgment on liquidated damages to 2300. See Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 234 (4th Cir. 2007). Because this appeal invokes our diversity jurisdiction, we apply state substantive law and federal procedural law. See Gaspirini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).

The parties agree that District of Columbia law governs the contract at issue in this case. Under District law, "summary judgment is appropriate where a contract is unambiguous" on its face. Holland v. Hannan, 456 A.2d 807, 815 (D.C. 1983). When interpreting a contract under District law, we must determine "what a reasonable person in the position of the parties would have thought the [contract] meant." 1010

<u>Potomac Assocs. v. Grocery Mfrs. of Am., Inc.</u>, 485 A.2d 199, 205 (D.C. 1984).  To do so, we interpret the contract "as a whole, giving a reasonable, lawful, and effective meaning to all its terms, and ascertaining the meaning in light of all the circumstances surrounding the parties at the time [it] was made."  <u>Nest & Totah Venture, LLC v. Deutsch</u>, 31 A.3d 1211, 1219 (D.C. 2011).

Properly applying District law, the court determined that the contract unambiguously defines substantial completion. Pursuant to the contract, "[w]hen the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion."  Further, Harkins' submission of certain documents to the architect is a prerequisite to achieving substantial completion.  If the architect notifies Harkins that an item "is not sufficiently complete in accordance with the Contract Documents," Harkins' completion or correction of that item is a prerequisite to issuance of the Certificate of Substantial Completion.

As Harkins correctly notes, the contract does provide that at the time of substantial completion, "the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use."  However, the

9

contract also expressly provides that substantial completion is not a prerequisite to occupancy or use. Moreover, the argument Harkins advances reads the requirement of the architect's certification out of the definition of substantial completion and, thus, fails to give "effective meaning to all its terms" as District law requires. Nest & Totah Venture, 31 A.3d at 1219.

Given the clarity of the contract when viewed as a whole, the district court did not err in granting partial summary judgment to 2300, finding Harkins liable for liquidated damages. Id.

B.

The remaining issue we address here concerns the district court's calculation of damages following the eight-day bench trial. Harkins argues that the court miscalculated total damages due to mathematical errors. Specifically, Harkins claims that the district court miscalculated bond costs, permit fees, and the General Contractor fee.

Under District law, the damages amount need be only a "just and reasonable estimate based on relevant data," and need not be "proven with mathematical precision." Affordable Elegance Travel, Inc. v. Worldspan, L.P., 774 A.2d 320, 329 (D.C. 2001). Moreover, we have recognized that "[t]he trial court, as a fact-finder, possesses considerable discretion in

fixing damages, and its decision will be upheld absent clear error." Little Beaver Enters. v. Humphreys Rys., 719 F.2d 75, 79 (4th Cir. 1983). We find that the court's damages award, even if it did not precisely calculate total damages, nonetheless was "just and reasonable." Further, we reject Harkins' challenges to the district court's evidentiary rulings, finding no abuse of discretion in the court's admission of lay opinion testimony. See Fed. R. Evid. 701; Noel v. Artson, 641 F.3d 580, 591 (4th Cir. 2011). Finally, we note that, upon review of the record, we agree with 2300 that Harkins waived its claim that the court neglected to remove $82,600 in costs related to roof repair. Accordingly, we affirm the amount of the award.

## III.

For these reasons, and for the reasons stated by the district court, judgment in favor of 2300 in the amount of $3,922,189 is

AFFIRMED.

11